# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## WALKER v. LEWIS.

### MARCH 15th, 1894.

1. WILLS—*Construction*—"*Son*"—*Estates tail.*—The word "son," in its technical sense, is a word of purchase, and must be so construed, unless in the context there is something to the contrary. Nor since the act abolishing entails can a testator be presumed to intend to create an estate tail unless he uses such words as created such estate without implication.

2. IDEM—*Estates tail*—*Shelley's case.*—A devise of lands to one for life, and after his death to his sons and their heirs forever, to be equally divided among them, but in case of his dying without leaving a son or son's son who can take, then to other designated persons, does not under the rule in *Shelley's Case* create a fee tail in the first devisee, which becomes converted by statute into a fee simple. *Taylor* v. *Cleary*, 29 Gratt., 448.

3. IDEM—*Contingent fees*—*Perpetuities.*—Two contingent fees by way of remainder may be limited as substitutes or alternatives one for the other, the latter to take effect in case the prior one fails to vest in interest, and is immediately avoided upon the first so vesting, it being limited to vest in interest within a life or lives in being and twenty-one years and ten months thereafter.

Appeal from decree of circuit court of Danville, rendered June 13, 1891, in the consolidated causes of Drumgold against Lewis and Walker against Lewis. The single question in the case arose upon the construction of the will of John Lewis, deceased, which was executed in 1805, and admitted to probate in 1816, the year of the testator's death. The clause of the will in question is as follows:

"I give and devise the tract of land on which I now live,

lying in Pittsylvania county, and on the north side of Dan river, containing about 1,300 acres, be the same more or less, to my brother, Charles Lewis, for and during his life, and after his death to his son, Nicholas Merewether, for and during his life, and after his death to his sons and their heirs forever, equally to be divided among them. But if Nicholas Merewether should die without leaving a son or son's son who can take the estate, and my brother Charles should have a second son, then at the death of Nicholas Merewether I give the said tract of land to the second son of my brother Charles, for and during his life, and after his death to his sons and their heirs forever, equally to be divided among them. But if my brother Charles should have more than two sons, and the two first should die leaving no son nor son's son living who can take the estate, then I give the said tract of land to the third son of my brother Charles, and after his death to his sons and their heirs forever, equally to be divided among them; and so on to every other son that he may have for life, with like remainders after their deaths to their sons forever, equally to be divided among them. But if my brother Charles should die leaving no son nor son's son capable of taking the estate, then in that event I give the said tract of land to the three sons of my deceased brother Robert for and during their lives, equally to be divided among them, to wit: John Goin, Robert Henry, and Merewether Warner, the part of each son at his death to go to his sons, equally to be divided among them and their heirs forever. If one or two of the said sons of my brother Robert should die leaving no son nor son's son capable of taking his part of the said land, then the part or parts of those that die without leaving sons or son's sons capable of taking, shall go to the surviving brother or brothers, and after his or their deaths to his or their sons, equally to be divided among them and their heirs forever. But if all three of my brother Robert's sons should die without leaving a son or son's son capable of taking the said land, then I give the said tract of land to the

sons living at the time of my sister, Jane Read, equally to be divided among them and their heirs forever."

Charles Lewis survived the testator, and afterwards died, having had ho other son than Nicholas Merewether. The latter died in 1889, unmarried and without issue. Robert Lewis' eldest son, Robert Henry, died in the year 1825, leaving a son, Fielding, who died in 1875, leaving two children, Frank and Annie. The second son of Robert, John Goin, died in 1831, unmarried and without issue; and the third son, Merewether Warner, died in 1846, leaving a son, John W., and a daughter.

The circuit court held that at the death of Nicholas Mereweather the contingent remainder to the descendants of Robert took effect, and accordingly decreed that at the death of John Going, the second son, his interest passed, under the will, to his only surviving brother, Mereweather Warner, whose son, John W., took, at the death of Nicholas Mereweather, two-thirds of the estate, and that the other third passed to the children of Fielding. From this decree an appeal was allowed by one of the judges of this court.

*Green & Miller*, *E. B. Withers*, and *F. W. Christian*, for appellants.

*E. E. Bouldin* and *Berkeley & Harrison*, for appellees.

LEWIS, P. (after stating the case as aforesaid), delivered the opinion of the court.

It is clear, and we do not understand it to be seriously controverted, that Charles Lewis took under the will only a life estate. It is contended, however, in opposition to the decree, that Nicholas Mereweather, by operation of the rule in *Shelly's Case*, took a fee tail, converted by the statute into a fee simple. That rule, now abolished in Virginia, is that where an estate of freehold is limited to a person, and the same instrument

contains a limitation, either mediate or immediate, to his heirs or the heirs of his body, the word heirs is a word of limitation; so that, if the limitation be to the heirs of his body, he takes a fee tail; if to his heirs general, a fee simple. But clearly, it was not the intention of the testator to give to Nicholas Mereweather anything more than a life estate, and the intention in such a case must govern in the interpretation of the will, unless language is used which brings the case within some inflexible rule of law, as in *Moore* v. *Brooks*, 12 Gratt., 135, and *Hall* v. *Smith*, 25 *Id.*, 70, in both of which cases words appropriate to create a fee tail were superadded to the gift of a life estate; in the first case the devise being to M. and B. for and during their natural lives, and then to "their heirs lawfully begotten"; and in the second to M. for life, and then to "the lawful issue of her body," &c. The rule in *Shelly's Case* was, therefore, held to apply, on the principle, stated by Lord Redesdale in *Jesson* v. *Wright*, 2 Bligh, 1, viz: that "technical words shall have their legal effect, unless from subsequent inconsistent words it is very clear that the testator meant otherwise."

But here no such technical words are used. The devise is to Nicholas Mereweather "for and during his life, and after his death to his *sons* and their heirs forever, equally to be divided among them." Now, here not only is a life estate given expressly, but the subsequent language is not such as of itself to create a fee tail; for while a testator may use the word son as a word of limitation, it is, in its technical sense, a word of purchase, and was presumably so used in the present case, there being nothing in the context to show the contrary. 3 Lom. Dig., 302; *Moon* v. *Stone*, 19 Gratt., 130, 242.

It was forcibly remarked by Judge Lyons, in *Smith* v. *Chapman*, 1 H. & M., 240, 302, that since the act of 1776 abolishing entails, he would not *suppose* a man intended to convey an estate tail unless plain and unequivocal words were used, such as would of themselves create a fee tail without resorting to

implication; as a devise " to A. and the heirs of his body," or
" to 'A., and if he die without issue," &c.; and he added that
to fulfil the plain and manifest intention of the donor the limi-
tation must be equally plain and express; not an implied limi-
tation by mere construction to enlarge an express estate for life
into an estate in fee or fee tail.  See, also, 2 Min. Insts. (4th
ed.), 465; *Taylor* v. *Cleary*, 29 Gratt., 448.

Inasmuch, therefore, as Nicholas Merewether, who was an
only son, died without having had a son, the circuit court rightly
held that at his death the remainder over to Robert Lewis' de-
scendants took effect.  It is contended, however, that the latter
devise is void, because the preceding limitations over were void
for remoteness.  But its validity is not dependent upon the
validity of those limitations, and we need not, therefore, stop
to inquire as to their validity.  The devise to Robert's sons,
etc., was intended as a substitute to take effect in the event of
the failure of the former limitations over to take effect, and as
such is valid, it being limited to vest in interest within a life
or lives in being and twenty-one years and ten months there-
after.

It is a well established rule of the common law that while
no remainder can be limited after a limitation in fee, yet two
contingent fees, by way of remainder, may be limited as sub-
stitutes or alternatives, one for the other, the latter to take
effect in case the prior one should fail to vest in interest, and
is immediately avoided if the first does vest in interest.  1
Lom. Dig., 417; 2 Min. Insts. (4th ed.), 395; *Cooper* v. *Hep-
burn*, 15 Gratt., 551, 559.  And Redfield, in his work on Wills,
in treating of perpetuities, lays it down, on the authority of
numerous adjudged cases, that " alternative limitations may be
so framed as to be good or bad according to the event; and if
the contingency which is valid occur, the estate will be held
legal, notwithstanding the other alternative be too remote."
2 Redf. Wills, 573.

The will further provides that " if one or two of the said

sons of my brother Robert should die, leaving no son nor son's son capable of taking his part of the said land, then the part or parts of those that die without leaving sons or son's sons capable of taking shall go to the surviving brother or brothers, and after his or their deaths to his or their sons, equally to be divided among them and their heirs forever."

Whilst this language is not very plain, we are of opinion that the construction put upon it by the circuit court is the correct one. Therefore at the death of John Goin, his "part" went to his only surviving brother, Merewether Warner, for life, and at his death to his "sons, equally to be divided among them." Merewether Warner, however, died, having had only one son, who survived him and Nicholas Merewether, also, and who, as the circuit court decreed, is entitled to two-thirds of the land, the remaining third going to the children of Fielding Lewis, deceased, the only son of Robert Lewis' eldest son, Robert Henry, who died in 1825.

DECREE AFFIRMED.