# Richmond

## David H. T. Jewett, Admr., Etc. v. A. T. Harvie and W. S. Moorefield, Substituted Trustees, et al.

March 5, 1945.

Record No. 2883.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Andrew J. Ellis, Geo. B. White* and *Chas. C. Russell,* for the appellants.

*McGuire, Riely, Eggleston & Bocock, Denny, Valentine & Davenport* and *Sam B. Witt,* for the appellees.

Gregory, J., delivered the opinion of the court.

This suit was instituted by the filing of a bill of complaint by Armistead T. Harvie and W. S. Moorefield, substituted trustees under the will of John T. Jones, deceased, seeking among other things the construction of the testator's will. The will, in its entirety, reads as follows (The paragraphs were not numbered by testator but are numbered here for more convenient reference.):

1. "I give, devise and bequeath to my sister, Mrs. Mary J. Jewett, the sum of one thousand and five hundred dollars, and to my nephew, Jeremiah J. Jewett, the sum of one thousand dollars, and to my nephew, John W. Jewett, and David H. T. Jewett, the sum of five hundred dollars each, and to my nieces, Mrs. Annie Fisher, Mrs. Margaret Jones Morreset and Mrs. Mary Fields, the sum of five hundred dollars each.

2. "The above bequests are to be paid out of any funds derived from the sale of my interest in the property in Chesterfield County, Virginia, known as the Southern Coal and Iron Company, containing about twelve hundred acres of surface and mineral, provided, however, that the above aggregate sums will not exceed half of the amount of my interest in the said property, it is hereby specifically directed and understood that the beneficiaries to this bequest or any that may become interested in the same shall in no way have the right to force the sale of the said property, but must wait until such time as my Executrix or Executor shall see fit to sell and then have a reasonable time to pay the said bequests.

3. "I give to my nieces, Mary I. Jones and Margaret F. Jones, the children of my brother, Jeremiah W. Jones, the following property for life and to their descendants in fee, but the fee interest shall not obtain until the death of both of the above named children, if either of the above children die without issue then and in that event the remaining one and her descendants shall inherit the whole of this bequest, which is exclusive of their interest in the other property of my estate, the house and lot on West Main Street, No. 1920,

which was purchased from Mrs. Laura T. Savage on the corner of Main and Medow Streets and fronts 100 feet on Main Street and runs back on Medow 197′ 9″ to an alley, also the farm and buildings on the Reeves Tinsley home place, containing two hundred acres on Deep Run Creek in Tuckahoe District, Henrico County. The lot on Main Street is recorded in the name of my wife Annie R. Jones and the two hundred acres in the name of Reeves Tinsley's est. and was willed to me by her will of record in Henrico County, dated April the sixth, 1905. The above property is to be held by them free from any marital rights or control in any way, debts or liabilities of any husband or husbands they may have, notwithstanding that the two hundred acre farm is given to the girls for life, if it is found expedient by my executrix and Mr. John C. Easley, it can be sold and the proceeds invested in other real estate that will be of more advantage.

4. "The spring known as the Cold Spring with ten acres of land surrounding it is not to * * * sold, but may be leased for the benefit of my estate; this property adjoins the estate of the late Dr. John E. Woodward.

5. "I direct that the timber on the Dover property be sold and the money received for the same be put at interest to the credit of my estate.

6. "I direct that my real estate be kept together as much as possible and not to be sold except when necessary for the benefit of my estate and in the discretion of my Executrix with the advice and concurrence of my friend, Mr. John C. Easley, certain land that I will hereafter designate may be sold to create an accumulative fund to be put at interest to pay any tax on my non-productive property.

7. "My wife, Annie R. Jones, deceased, who was before marriage the daughter and only child of Reeves and Sarah J. Tinsley of Henrico County, Virginia, by her will directs that at my death the following legacies be paid; one thousand dollars to the Home for Incurables in the City of Richmond, one thousand dollars to the Sheltering Arms Hospital and one thousand dollars to the Old Ladies' Baptist Home in Rich-

mond and one thousand dollars to Deep Run Baptist Church in Henrico County, the said sum to be invested and the interest to be paid to the Church as directed by her will. I direct that these legacies be paid as soon as convenient.

8. "All the rest of my property of every description, wherever found, whether real or personal or mixed, including the spring and ten acres and proceeds of Dover timber, if sold, I give unto Mrs. Ada Irine Jones, the widow of·my late brother, Jeremiah W. Jones, to be held during her natural life, or as long as she remains my brother's widow upon the folowing trust, namely: That she shall take charge of all of my said estate and manage the° same as in her judgment may seem best, with the advice and concurrence of Mr. John C. Easley, for the benefit of John W. Jones, Jeremiah W. T., Jones, Mary Irine Jones and Margaret F. Jones, the children of my brother, Jeremiah W. Jones, that she shall have the power to collect and disburse the revenue derived from my said estate in such a manner and in such proportions for the benefit of the said children or their descendants, as she may wish. It being my intention to confer upon her the said, Ada Irine Jones, an absolute, and unlimited discretion in so doing.

9. "I hereby empower the said Ada Irine Jones, with the advice and concurrence of Mr. John C. Easley, to sell and convey any of my said property, including my real estate except what I have or may hereafter otherwise designate and to reinvest the proceeds arising therefrom to the credit of my estate, the income arising from said investment to be used for the benefit of herself and the children or any of them or their descendants as in her discretion may deem best, and any conveyance of any of my said trust estate made by her shall be a full and complete conveyance of the title thereto and no person or persons dealing with her touching any of said trust estate shall be required to see to the application of any funds arising therefrom and any receipt given by her shall be a sufficient discharge for any and all sums for or on account of said trust estate.

10. "I further direct that the said Ada Irine Jones shall

have the power under this my will to distribute at her death by will all of my said estate, real and personal among the said children of my late brother and their descendants in such proportions as she may wish, it being my intention to confer upon her such an unlimited discretion that she may leave all to any one of them to the exclusion of the other should she so desire, but such distribution or conveyance shall be only for their life or descendants of said children then living with the remainder in fee to the legal heirs of such children or their descendants, but any property or income therefrom given to either of the girls shall be free from the marital rights, debts, liabilities or control of any husband or husbands that they may have. My executrix shall have full *controle* in the management and disposition of the property given to the girls that she will have in the rest of my estate.

11. "Should the said Ada Irine Jones die without distributing the said trust estate, after the youngest child has arrived at the age of twenty-one years then the same shall go according to the statutes of descent in the State of Virginia, subject to the *qualifations* above mentioned as to the limitations of estate for life, and that property and income therefrom given to either of the girls, shall be free from the marital rights, debts, liabilities or *controle* in any way of any husband or husbands they may have.

12. "I hereby nominate and appoint the said Ada Irine Jones my sole Executrix of this my last will and testament without bond or security and I hereby direct that no appraisement shall be made of my property, I further direct that my said Executrix shall not account to anyone for the use or distribution of any income coming into her hands on account of my estate. My faith and trust in her being absolute.

13. "Should the said Ada Irine Jones die or marry, I direct that my friend, Mr. John C. Easley qualify as my executor and take charge of my estate and manage the same according to his judgment and distribute the same.

14. "Anything derived from policy of insurance in the

Equitable Life Assurance Society of the United States on the life of Thomas C. Jones, number 65854 shall pass to the said Ada Irine Jones to be held by her for the benefit of the children of my late brother, Jeremiah W. Jones, as set out in the above trust."

The cause was heard on the complainants' bill and the exhibit filed therewith, on the answers of the several defendants, the general replications of the complainants to said answers, and upon certain stipulations of counsel which were made a part of the record. All of the parties have requested the court at this time to construe the eleventh paragraph of the will, to determine the rights or interests of the parties thereunder in and to the *residuum* of the estate of John T. Jones, deceased, to adjudicate the nature of the estates created thereby, and to reserve for future determination all other questions raised by the pleadings.

The questions involved in the lower court were limited to the eleventh paragraph of the testator's will when taken and read in connection with all the other provisions thereof, and the determination of the rights of the parties thereunder, and to the adjudication of the nature of the estates created thereby. The material question to be decided is, Who took the *residuum* of the testator's estate under the eleventh paragraph of the will and what estate did they take therein?

The contest here is between the six children of Mary J. Jewett, deceased, who was a sister of the testator, on the one hand, and the four children of the testator's deceased brother, Jeremiah W. Jones. The Jewett children and the Jones children, as they will be hereinafter referred to, were nieces and nephews of the testator.

The court below decided that by the eleventh paragraph of the will, the testator intended to create interests in and provide for the ultimate disposition of the *residuum* of his estate on two separately stated contingencies, in the event Ada Irine Jones died without exercising the power of appointment conferred upon her in the will. First, in the event that her four children were living at the date of her death they should take life estates in equal shares in the *residuum*

with remainder in fee to their respective heirs at law; and second, in the event one or more children of Ada Irine Jones predeceased her, leaving issue who survived her, then her living children and the issue of her deceased children *per stirpes* should take life estate with remainder in fee to their respective heirs at law. The court further held that the contingency first mentioned having occurred, the *residuum* of the estate of John T. Jones, deceased, passed under the eleventh paragraph of his said will in equal shares to the defendants, John W. Jones, Jeremiah H. T. Jones, Mary Irine Jones, now Mary Jones Moorefield, and Margaret F. Jones, now Margaret Jones O'Neill, for the life of each, with the remainder in fee to his or her heirs at law; the life estate of the two daughters to be held and enjoyed by each, free from debts, liabilities, and control of her husband. The court further held that the Jewett children had no right, title or interest, legal or equitable, in the *residuum*. It is from the decree which carried the decision of the court into effect that this appeal is prosecuted.

There is no controversy over the facts. They are established by the pleadings and by the stipulations of counsel. The testator, John T. Jones, died in the year 1920. His will is dated May 16, 1919, and was admitted to probate on February 20, 1920. At that time Ada Irine Jones, the widow of the testator's deceased brother and the executrix named in the will, was forty years old. She qualified as executrix and continued to act until October 13, 1941, when she died without having remarried, and without having exercised the power of appointment conferred upon her by the will.

At the death of the testator his heirs at law were a sister, Mary J. Jewett, and the said four children of his deceased brother referred to as the Jones children. Mary J. Jewett, at the time of the testator's death, had six children, all of whom were adults ranging in age from thirty-three to forty-six years, while the four Jones children were infants ranging in age from ten to fifteen years.

The appellants contend that, upon the death of Ada Irine Jones on October 13, 1941, without having exercised the

power of appointment conferred upon her, the *residuum* passed to all of the testator's heirs at law in equal portions, under the terms of paragraph eleven of his will wherein it was stated upon certain contingencies that the *residuum* "shall go according to the statutes of descent in the State of Virginia," and that the succeeding clause, "subject to the qualifications above mentioned as to the limitations of estate for life", is void, first, because it is repugnant to the devise, and second, because to give effect to it would violate the rule against perpetuities. There are other contentions, but the view that we take of the case will render it unnecessary to discuss them.

The appellees contend that when the meaning of the testator is obtained from the reading of the entire will it will disclose that the Jones children were the special objects of the testator's bounty; that he intended to give them life estates with remainder to their heirs at law after the death of their mother; and that the court is bound to give effect to this paramount intent.

We must seek the intent of the testator from the language he used in his will, and in doing this we must consider the language of the whole will. A reading of the entire will discloses that the testator had in mind the Jones children as special objects of his bounty. He clearly intended to prefer them over the Jewett children. This intention is manifested as to the *residuum*, which is all that is involved here, in paragraphs 8, 9, 10, 11 and 14. In paragraph 8, in which the trust is created, "all the rest of my property * * I give unto Mrs. Ada Irine Jones * * to be held by her during her natural life * * upon the following trust, namely; that she shall take charge of all of my said estate * * for the benefit of John W. Jones, Jeremiah W. T. Jones, Mary Irine Jones and Margaret F. Jones, the children of my brother, Jeremiah W. Jones, that she shall have the power to collect and disburse the revenue derived * * for the benefit of the said children or their descendants * * ", shows an intent on the part of the testator to prefer the Jones children.

Again in paragraph 9 the testator directs " * * the income arising from said investment to be used for the benefit of herself and the children or any of them or their descendants * * ". By this language the testator is referring only to the Jones children.

Again in paragraph 10 the testator granted Mrs. Ada Irine Jones, the life tenant, the full power to dispose of the entire *residuum* to the Jones children and their descendants in such proportions as she might wish.

Paragraphs 11 and 14 also manifest a like intent of the testator to prefer the Jones children to the exclusion of the Jewetts.

Only in paragraph one are the Jewetts mentioned. There they are given small bequests, the payment of which is conditioned upon the sale of certain property. After these bequests they were no longer in the mind of the testator for he never mentioned them again. On the other hand, the Jones children were in his mind all through the remainder of the will.

The appellants rely solely upon a part of one sentence, in paragraph 11, which we italicize, to support their contention that the failure of the life tenant to dispose of the *residuum* caused it to go to all the heirs at law of the testator equally rather than to the Jones children to the exclusion of the Jewetts. Paragraph 11 reads: "Should the said Ada Irine Jones die without distributing the said trust estate, after the youngest child has arrived at the age of twenty-one years *then the same shall go according to the statutes of descent in the State of Virginia*, subject to the *qualifications* above mentioned as to the limitations of estate for life, and that property and income therefrom given to either of the girls, shall be free from any marital rights, debts, liabilities or *controle* in any way of any husband or husbands they may have."

Ada Irine Jones died without distributing the trust estate. The youngest Jones child arrived at the age of twenty-one during her life. "The youngest child", etc., could not refer to the Jewett children because they were all over twenty-one years of age before the testator made his will. The words

"either of the girls", means one of the Jones girls. We are urged to take the italicized words, *"then the same shall go according to the statutes of descent in the State of Virginia,"* and construe them to mean the heirs at law of the testator and to delete the qualification that follows referring to the life estates created in paragraph 10. We are not at liberty to do this, for it would destroy the paramount intent of the testator which manifests itself all through the will.

In paragraph 11 the testator was not referring to the Jewett children, he was only referring to the Jones children. "After the youngest child has arrived at the age of twenty-one years then the same," etc., has no meaning unless it applies to the Jones children, for they were the only children under twenty-one years of age at the time the testator made his will. The youngest Jewett child was thirty-four years of age at that time. The words "subject to the qualifications above mentioned as to the limitations of estate for life" are bound to have meant those qualifications and limitations of estate for life provided for in paragraph 10. We cannot disregard all of the plain language in paragraph 11 and consider only the words "shall go according to the statutes of descent." If the estate should be construed to go according to the statutes of descent and pass to the heirs at law of the testator, the dominant intent of the testator, as clearly expressed in the entire will, would be defeated.

In paragraph 14 the testator again makes his intent plain. He directs that the proceeds of certain insurance "shall pass to Ada Irine Jones to be held by her for the benefit of the children of my late brother, Jeremiah W. Jones, as set out in the above trust." This could only refer to the trust set out in paragraphs 8, 9, 10 and 11, for the benefit of the Jones children.

The language of paragraph 10, "but such distribution or conveyance shall be only for their life or descendants of said children then living with the remainder in fee to the legal heirs of such children or their descendants," means, when read in connection with paragraph 11, that after the death of Ada Irine Jones, and after the youngest child is

twenty-one years of age, and Ada Irine Jones has failed to exercise the powers conferred upon her, the testator intended the *residuum* to go to the Jones children (all of whom were living at the death of Ada Irine Jones) surviving their mother, for life, with remainder to their heirs at law. If any of the Jones children predeceased their mother, leaving surviving descendants (which did not occur), then the portion which would have passed to the child for his life passed to his descendants for life with remainder to descendants' legal heirs. As events have transpired, the four Jones children, all being twenty-one years old and their mother having died without making disposition of the property, take an estate for their respective lives with remainder to their heirs at law. This conclusion carries out the paramount intention of the testator. See *Whitehead* v. *Whitehead*, 174 Va. 379, 6 S. E. (2d) 624; *Price* v. *Cole*, 83 Va. 343, 2 S. E. 200; *Hill* v. *Hill*, 127 Va. 341, 103 S. E. 605, and Harrison on Wills and Administration, Vol. 1, sec. 193(2).

The remainders created by the testator after the expiration of the life estate of the mother, Ada Irine Jones, were contingent. He first made a gift for life to the Jones children living at the death of their mother. This remainder was contingent because no one could know which of them would survive their mother. Next he made a gift for life to the descendants, if any, of any of the Jones children who might have predeceased their mother. Of course, this remainder was contingent for the reason that no one could know until after the mother's death whether there would be a descendant of any Jones child living at that time. In the first instance, after the expiration of the life estate to the Jones children, he gave the remainder to their heirs at law. In the second instance, if the contingency had arisen, after the expiration of the life estate of a descendant or descendants of any Jones child or children who might have predeceased his or their mother leaving descendants, the testator gave the remainder to the legal heirs of such descendants. The first contingency to the vesting of the remainder was that the Jones children survive their mother. If this contingency

failed then the second contingency was that one or more of them fail to survive their mother and upon her death such deceased child must have died leaving a descendant or descendants.

Clearly then the testator himself has made the gifts to the Jones children and the gifts to their descendants upon two separate contingencies, the happening of the first causing the remainder to fall upon the Jones children for life with remainder to their heirs, and the happening of the second causing the remainder to fall upon the descendants, if any, for life with remainder to their heirs.

It has so happened that the event calling for the application of the first contingency has transpired. The four Jones children survived their mother, and the life estate to them with remainder to their heirs has vested and is valid. The events calling for the application of the second contingency have never arisen and can never arise. The alleged invalidity of the second contingency, for the reason that it violates the rule against perpetuities, is unimportant because the first contingency has occurred which has now vested in the Jones children a valid remainder. The second contingency can never occur, and it may have been invalid because it was too remote, yet this fact will not be permitted to vitiate the valid estate which has already vested in the Jones children under the happening of the first contingency.

Our conclusion is supported by the authorities. In The Rule Against Perpetuities, Gray, 4th Ed., p. 375, this is said:

"When the settlor or testator has himself separated the contingencies, there is no difficulty in regarding the gifts separately and upholding one, although the other fails. And the courts naturally, and properly, lean to considering the gifts separately, when it can be done. The cases are given in the following sections."

The principle is recognized in *Cooper* v. *Hepburn*, 15 Gratt. (56 Va.) 551, and *Walker* v. *Lewis*, 90 Va. 578, 19 S. E. 258.

Where one construction of the will will be void be-

cause of perpetuity and another construction of the will is valid, the court sustains the construction which maintains the validity of the will. See Harrison on Wills and Administration, Vol. 1, sec. 197(1).

We find no reversible error in the form of the decree.

Upon the whole case, we are of opinion that the decree should be affirmed.

*Affirmed.*