# Richmond

WILLIAM H. BURRUSS, III, ET AL., INFANTS, BY WILLIAM L. WILSON, GUARDIAN AD LITEM v. B. C. BALDWIN, JR. AND WILLIAM H. BURRUSS, JR., EXECUTORS OF THE ESTATE OF WILLIAM H. BURRUSS, DECEASED, ET AL.

April 28, 1958.

Record No. 4802.

Present, Hudgins, C. J., and Eggleston, Buchanan, Miller, Whittle and Snead, JJ.

The opinion states the case.

*William L. Wilson*, for the appellants.

*Edward S. Graves* (*Edmunds, Whitehead, Baldwin & Graves*, on brief), for the appellees.

EGGLESTON, J., delivered the opinion of the court.

The purpose of this suit is to construe the will of William H. Burruss, deceased, and obtain the instructions of the court in the administration of his estate. On November 30, 1949, Burruss executed a typewritten will prepared by his attorney. A few days before his death, which occurred on December 13, 1955, he wrote in his own handwriting and signed the following undated paper:

"1st All personal debts to be paid.

& women

"2nd Each of the office men to be paid given 50 shares of stock in the B. L. & L. Co. Inc.

"3rd My son W. H. B. Jr. to be sold at par value enough stock to give him a majority of all Burruss Land & Lumber Inc. stock. Twenty years time shall be given him to pay for the said stock.

WHB Jr's death          Gilley

"4th In case of his ~~death~~ H. H. Dennis J. M. & A. F. Durham to have the management of the business and they to receive salaries to compensate for the liquidation of the business which shall not exceed two years.

"5th When the business is liquidated then the money or an appraised value placed by the managers of all plants and the office manager acting together may divide/moneys or property equally as they see fit between my heirs.

"6th My interest in Ralco stores Otter Hill Farms, Burruss Farms, Connelly & Burruss Farms, The Bondurant Farm, the Pamplin Farm, The Pamplin House, and the Brookneal House to be sold and the proceeds to be placed in a fund from which my grandchildren are to receive an education as high as their abilities may acquire.

"7th All stocks and bonds and life insurance are to remain invested as they are after using whatever is necessary from same to pay my taxes. In other words my bank stocks are to continue invested in bank stocks, my B L & L stocks to pay for my taxes and the proceeds from the other stocks are to go in the fund created for my grandchildren. Each of whom are to share alike."

In a probate proceeding both the typewritten and holographic wills, in so far as they were not inconsistent, were admitted to probate. The probate court held that all of the dispositive provisions of the first will had been revoked and superseded by the provisions of the later will, leaving in effect only Article VII of the first will nominating executors and providing for their powers of administration. In short, it held that the last will and testament consisted of the holographic writing and Article VII of the first will.

In the present suit, after the necessary parties had been convened and depositions taken, the lower court held and decreed, in so far as it is pertinent to the present appeal, that (1) under item "3rd" the testator's son, William H. Burruss, Jr., is given the right to purchase the majority of the stock of Burruss Land & Lumber Company, Inc., in twenty equal annual installments "without interest;" (2) items "6th" and "7th", providing for the education of the testator's grandchildren and the ultimate distribution of the fund, are void and of no effect because they violate the rule against perpetuities, and also because of their "vagueness and uncertainty." Consequently, the court further held and decreed that the residuary estate descended to the testator's four children under the statutes of descent and distribution. From this decree the grandchildren of the testator, both born and unborn, by their guardian ad litem, have appealed.

The testator was survived by his divorced wife, Helen C. Burruss, with whom he had made a property settlement. In her answer filed in the cause she disclaimed any interest in the testator's estate. He was also survived by two married daughters, an unmarried daughter, and a married son. The ages of these children and their spouses ranged from twenty-three to thirty-three years. Each of the married couples had a child. There is evidence that the testator hoped for and expected other grandchildren. At the time the will was written he knew that one of his daughters was pregnant. While she lost that child after the testator's death, another was later born to her.

The testator left an estate consisting of both real and personal property which was appraised at approximately $1,300,000. Included in his estate were 4,710 shares of the voting common stock of the Burruss Land & Lumber Company which he had successfully operated. This stock was appraised at $100 per share. The record does not disclose the amount and value of the "bank stocks" and other "stocks and bonds" or "life insurance" referred to in item "7th" of the will. Nor does it show the value of the properties mentioned in the "6th" item.

The testator's son, William H. Burruss, Jr., had been for a number of years employed by the Burruss Land & Lumber Company. He owned 310 shares of the voting stock of that concern. It appears from item "3rd" of the will as well as from extrinsic evidence that the testator desired this son to acquire the controlling interest in the company.

We agree with the holding of the lower court that under item "3rd" of the will William H. Burruss, Jr., was given the right to acquire the majority of the stock in the Burruss Land & Lumber Company over a period of twenty years "without interest." This right does not depend, as the appellants contend, upon the consideration of declarations of the testator's intent or an inspection of a provision in the earlier will dealing with the same subject. The right is found in the language of the will itself. The testator says, "Twenty years time shall be given him to pay for the said stock," which is a plain indication that the debt was not to become due until the expiration of that period. It is elementary that in the absence of an express stipulation for the payment of interest from an earlier date, interest runs from the maturity of the debt. *Buchanan* v. *Leeright*, 1 Hen. & M. (11 Va.) 211; 47 C. J. S., Interest, § 26, p. 38; 30 Am. Jur., Interest, § 40, p. 35.

■ The principal question presented by the assignments of error is whether the lower court correctly held that items "6th" and "7th", providing for the education of the testator's grandchildren and the ultimate distribution of the fund, are void and of no effect because they violate the rule against perpetuities. For the reasons to be stated, we agree with that holding.

The rule against perpetuities, as applied in this jurisdiction, is thus stated in Graves' Notes on Real Property, 1912 Ed., § 215, p. 256:

"Any executory interest which, by possibility, may not take effect until after lives in being and twenty-one years and ten months, is *ipso facto* and *ab initio* void. In other words, the executory interest is void for remoteness if at its creation there exists a *possibility* that it may not take effect during any fixed number of now existing lives, nor within twenty-one years and ten months after the expiration of such lives, even though it is highly probable, or, indeed, almost certain, that it will take effect within the time prescribed. * * * "

See also, Minor on Real Property, 2d Ed., Vol. 1, § 809, p. 1047; *Skeen* v. *Clinchfield Coal Corp.*, 137 Va. 397, 403, 119 S. E. 89, 90; *Claiborne* v. *Wilson*, 168 Va. 469, 474, 192 S. E. 585, 586.

As was pointed out in *Rose* v. *Rose*, 191 Va. 171, 179, 60 S. E. 2d 45, 48, the rule against perpetuities is not a rule of construction but a positive mandate of law to be obeyed irrespective of the question of intention, and is to be applied even if the accomplishment of the expressed intent of the testator is made impossible. It is a rule adopted in furtherance of public policy to prevent excessive restraints or limitations upon the alienation of an estate. Minor on Real Property, 2d Ed., Vol. 1, § 808, p. 1046.

Hence, in determining the validity of a testamentary provision, we must first ascertain the testator's intent as expressed in the language used by him and if it violates the rule against perpetuities, public policy forbids that the provision be carried into effect.

It is obvious that in the present case the testator intended by items "6th" and "7th" to provide a trust fund for the education of his grandchildren. It will be observed that he did not specify that the beneficiaries of the fund were his grandchildren who were living at the time he wrote the will. He did not name them as such. Nor is it likely, under the circumstances, that he intended to confine the beneficiaries to such grandchildren as were living at the time of his death. He knew that one daughter was expecting a child and it is not likely that he intended to exclude that grandchild. Moreover

there is evidence that he wanted and expected other grandchildren. Thus, it is reasonably clear that the testator intended that the beneficiaries of the fund were to be his grandchildren living at the time of his death and those born thereafter.

The last sentence in the will that each of the grandchildren "are (*sic*) to share alike" evidently refers to the ultimate distribution of the educational fund. Unless it is so intended the sentence is meaningless, because in the preceding item it is specified that the grandchildren are to receive an education "as high as their abilities may acquire" and it is unlikely that he meant that each was to receive the same education.

When construed together these two items of the will describe first, the type of education each grandchild is to receive, and second, the manner of ultimate distribution of the fund. Thus the class of beneficiaries, the testator's grandchildren, would open up to admit others who might qualify for educational benefits and would close at the time of the ultimate distribution.

In considering whether an interest vests at a time too remote under the rule against perpetuities, mere improbability that the limitation will take effect beyond the prescribed period is immaterial. "The rule against perpetuities requires that it be *legally impossible* that the event upon which the future limitation is to vest in interest be postponed beyond life or lives in being, and ten months and twenty-one years." Minor on Real Property, 2d Ed., Vol. 1, § 811, p. 1050.

Tested by these principles the testamentary provisions here are clearly violative of the rule against perpetuities. It is possible that none of the educational fund could either be expended or distributed within the period of the rule. It is possible that all of the children and grandchildren living at the testator's death might die and only grandchildren born after his death would be beneficiaries of the fund. It is true that all of the potential beneficiaries would necessarily be born within lives in being at the testator's death, that is, during the lives of their respective mothers, but the will does not provide for benefits payable upon the birth of such grandchildren. Payment of the benefits begins only when these grandchildren begin their education. It is possible that none of them born after the testator's death might begin their education within twenty-one years and ten months of the termination of all lives in being at the testator's death. It is likewise possible that the education of these grandchildren might not be completed and the corpus of the fund dis-

tributable within the required period. It is thus possible that no interest might vest or take effect within the required period.

As is said in Minor on Real Property, 2d Ed., Vol. 1, § 824, pp. 1065, 1066:

"It will be remembered that a gift to a class of persons is spoken of as being vested as soon as any member of the class comes within its terms. It is not, however, vested so as to prevent the application of the rule against perpetuities. A contingent gift to a class must be so limited as to vest, if at all, in each member of the class within the period prescribed, or the gift will fail as to the whole class. Thus a limitation to such of the grandchildren of the testator as shall reach 25 would be void, although there were grandchildren living at the testator's death. Obviously these grandchildren might die and others be born who would not reach 25 until more than 21 years after the termination of a life in being at testator's death. As viewed at *the testator's death* it cannot be told which, if any, of the grandchildren will reach the required age within the prescribed period, and consequently the limitation is *void* as to *all the members* of the class, even as to those who become twenty-five within the period."

See also, *Rose* v. *Rose, supra*, 191 Va., at page 180, 60 S. E. 2d, at page 48; 41 Am. Jur., Perpetuities, etc., § 58, p. 102.

It is argued on behalf of the infant appellants that the application of the rule against perpetuities should be avoided by holding, under the principle favoring the early vesting of estates, that the three grandchildren living at the testator's death and all future grandchildren take an absolute vested interest in the educational fund. In short, it is said, this "is an immediate gift to the grandchildren, with immediate right of possession."

But, of course, the early vesting rule does not prevail over the expression of a contrary intent by the testator. Minor on Real Property, 2d Ed., Vol. 1, § 713, pp. 935, 936; 16 Mich. Jur., Remainders, etc., § 5, pp. 86, 87.

In the present case there are no words indicative of a gift to the grandchildren with the immediate right of possession or enjoyment. The direction is that certain properties are to be sold and the proceeds "placed in a fund from which my grandchildren are to receive an education." A grandchild has no immediate interest in the fund, or even a right of enjoyment therein before he reaches the age at which his education may begin. When he arrives at the proper age he has the mere right to receive an education from the fund. Should he die

before that time, or before his education has been completed, no interest in the fund would pass to his heirs. Indeed, not until the education of all of the grandchildren has been completed can it be determined what grandchildren will share in the distribution of the fund. *Harris* v. *Harris*, 166 Va. 351, 354, 186 S. E. 29, 30. See also, Minor on Real Property, 2d Ed., Vol. 1, § 824, pp. 1065, 1066, *supra*.

*Bayly* v. *Curlette*, 117 Va. 253, 84 S. E. 642, strongly relied upon by the appellants, is clearly distinguishable from the case at bar. In that case the testatrix devised certain real estate to her "grandchildren the present heirs and those that may hereafter be" of her son. Then followed this provision: "I also devise and bequeath all the rest and residue of my estate both real and personal to the above said heirs for their education and maintenance to share and share alike * * *." The son of the testatrix was appointed trustee to manage the property for the heirs. The property was "to remain undivided until the youngest child shall be 21 years old."

All of the grandchildren of the testatrix predeceased her son and the children of the deceased grandchildren brought suit to have their rights in the property determined. It was held that the property interests of the grandchildren vested upon the death of the testatrix, subject only to open up and let in other children which might be born to the son of the testatrix.

It will be observed that in that case, unlike the case before us, there was a direct and outright gift of the estate to the grandchildren for their education and maintenance. The provision for their maintenance indicated an immediate right of enjoyment of the fund.

Having reached the conclusion that items "6th" and "7th" are void and of no effect because they violate the rule against perpetuities, it is unnecessary that we consider whether they are likewise void for vagueness and uncertainty.

The decree appealed from is

*Affirmed.*