## Richmond

ANNE MUTTER WOODWARD HAGEMANN AND FLETCHER C. WOODWARD, JR. v. NATIONAL BANK AND TRUST COMPANY, ADMINISTRATOR, C.T.A. OF THE ESTATE OF MILDRED HART WOODWARD, DECEASED, AND TRUSTEE U/W MILDRED HART WOODWARD, MALCOLM P. WOODWARD, KATHERINE D. WOODWARD AND INFANT BENEFICIARIES, NOW BORN OR AS YET UNBORN, UNDER ARTICLE EIGHT OF THE WILL OF MILDRED HART WOODWARD.

September 1, 1977.

Record No. 760745.

Present: All the Justices.

334

*Lewis A. Martin, Jr.*, for appellants.

*Francis L. Buck; Gary M. Nuckols (Harold R. Bailes; Paxson, Smith, Boyd, Gilliam & Gouldman, P.C.; Bailes, Lindstrom & Tucker, Ltd.*, on briefs), for appellees.

No brief for Katherine D. Woodward, appellee.

POFF, J., delivered the opinion of the Court.

In this appeal, we are asked to construe a will to determine whether the residuary clause violates the rule against perpetuities.

The will of Mildred Hart Woodward, executed January 15, 1971, was admitted to probate on March 16, 1971, and National Bank and Trust Company, the trustee named in the will, qualified as administrator, c.t.a. The testatrix was survived by

her children, Anne Mutter Woodward Hagemann, Fletcher D. Woodward, Jr., and Malcolm P. Woodward, her sole heirs at law, all of whom were named as beneficiaries in her will.

Article Eight, the residuary clause of the will, creates two equal trust funds, one for Fletcher and his descendants and the other for Malcolm and his descendants. The clause contains eight paragraphs. Paragraph 1 provides that the son will receive the income so long as he lives and has living children under the age of 25 years and that, upon the son's death, the income shall be paid to his surviving wife and children for their "support, comfort and education"; paragraph 2 authorizes the trustee to invade the corpus for such purposes. Paragraph 3 provides:

> "3. When the youngest living child of such son of mine has reached age twenty-five years, that trust shall end and the fund shall be divided one-third to such son of mine and two-thirds equally to his then living descendants, *per stirpes.* Should such son of mine not then be living, the whole of the fund shall go to his then living descendants, *per stirpes.*"

Under paragraph 4, if the last surviving child of one of the testatrix's sons dies before attaining the age of 25 years, the corpus will be paid on that date to that son, if living, and if not, will be added to the corpus of the other trust fund. Paragraphs 5, 6, and 7 are irrelevant to the issue at bar. The provisions of paragraph 8, however, considered in context with those of paragraph 3, are of crucial relevance:

> "8. Notwithstanding the foregoing, if any portion of my estate is in any contingency capable of being held in trust for a longer period than is permitted by the law of the state of my domicile, or if in any such contingency the vesting of any interest hereunder may occur after the expiration of such permissive period, then upon the happening of any such contingency such portion of my estate shall not be held in further trust, but shall rather be paid over absolutely to the person or persons to whom, and in the proportions in which, such portion would ultimately go under the provisions hereof."

Anne and Fletcher, complainants, filed a bill of complaint seeking construction of the will. The administrator-trustee, Malcolm, and infant beneficiaries, now born or as yet unborn, were named respondents. The chancellor appointed a guardian

*ad litem* to represent the infant respondents and later joined Katherine D. Woodward, one of Fletcher's children who had attained her majority, as a party-respondent.[1] Complainants prayed that the residuary clause "be declared null and void and of no effect as violating the rule against perpetuities, and that as a consequence thereof it be declared that the testatrix died intestate as to her residuary estate". Respondents answered, and the cause was heard on the pleadings, memoranda of law, and argument by counsel.

The chancellor found that, absent paragraph 8, the provisions of paragraphs 1 through 7 "may result in" a violation of the rule against perpetuities but that paragraph 8 "modified" those provisions. The chancellor decreed that the residuary clause, as modified, "is construed to provide that the trust for [each son] shall continue until his then youngest living child reaches the age of twenty-one years, at which time the trust will terminate and the corpus will vest absolutely as of that date". By final decree entered February 13, 1976, he upheld the residuary clause as so construed, denied the prayer of the bill, and struck the cause from the docket.

On appeal, all parties agree that under the rule against perpetuities as applied in this Commonwealth, the remainder interests granted the children (or descendants) of the testatrix's sons by paragraph 3 are void unless "saved" by paragraph 8. Complainants contend that paragraph 8 "saves" none of the interests granted by paragraph 3 and that the residuary estate must pass by the laws of descent and distribution in equal shares to the three children of the testatrix. Respondents argue that paragraph 8 "saves" the residuary clause in its entirety, or, in the alternative, that the rule invalidates only the remainder interests of the children (or descendants) of the sons but not the income or remainder interests of the sons.

■ The rule against perpetuities in Virginia voids a contingent remainder or executory interest, created *inter vivos* or by will, which may, by some possibility, however unlikely that possiblity may be, vest beyond a life or lives in being at the effective date of the instrument creating the interest, plus 21 years and 10 months. *See Pleasants* v. *Pleasants*, 6 Va. (2 Call) 319 (1798); *Rose* v. *Rose*, 191 Va. 171, 60 S.E.2d 45 (1950);

---

[1] Katherine filed an answer but made no further appearance below or on appeal.

*Burruss* v. *Baldwin,* 199 Va. 883, 103 S.E.2d 249 (1958); *White* v. *National Bank,* 212 Va. 568, 186 S.E.2d 21 (1972).

█ The effective date of the Woodward will is the date of Mrs. Woodward's death. In paragraph 3, she disposes of two-thirds of each of the two funds there created to the descendants of her sons living when the youngest living child of a son attains 25 years. The words "then living" create an express condition that a descendant, as a member of the class of descendants, must survive to the time at which the youngest child of the son attains 25 years of age. A contingent remainder is created in the class of "descendants".

█ By the familiar rule in *Leake* v. *Robinson,* 2 Mer. 363, 35 Eng. Rep. 979 (1817), generally followed in the United States and discussed in detail in Simes and Smith, The Law of Future Interests § 1265 (2d Ed. 1956), a class must stand or fall as a unit when the rule against perpetuities is applied. If the interest of one member of that class could vest beyond the time permitted by the rule, the interests of all members of that class fail for remoteness. Here, it is possible that the sons could die survived by a child in gestation or by a child under the age of three years and two months. In such case the interest of descendants of the testatrix would vest upon the 25th birthday of that child which is beyond the time permitted by the rule. It is not *actuality* or *probability* but *possibility,* viewed from the effective date of the will, that actuates the rule against perpetuities.

█ Contrary to inadvertent dictum in *Driskill* v. *Carwile,* 145 Va. 116, 121-22, 133 S.E. 773, 774-75 (1926), which was later specifically rejected by this Court in *White* v. *National Bank, supra,* 212 Va. at 572, 186 S.E.2d at 24 (1972), there is no requirement in Virginia that members of a class must survive the closing date of the class and there is no presumption that such a requirement was intended. In paragraph 3 of the Woodward will, there is an *express* requirement of survivorship; the descendants take who are "then living" when the youngest child of a son attains 25 years of age.

█ In support of their position that the residuary clause is valid in its entirety, respondents rely upon two rationales. First, they urge us to approve the chancellor's holding that all residuary interests are saved by his construction of the clause as modified by paragraph 8; second, they ask us to construe the

residuary clause "in a manner which upholds its validity while allowing a 'wait and see attitude' as to whether or not the savings clause has to be applied." We address the latter rationale first.

As respondents point out, these contingent remainders *could* vest before expiration of the term permitted by the rule upon the happening of any of several events. For example, the rule *could* be satisfied if the testatrix's son should die survived by children, none of whom are under the age of three years and two months and none of whom are in gestation at his death. There are other possibilities, even probabilities, of valid vesting. Respondents say, in effect, that we should so construe the will that the trustee will be allowed to "wait and see" whether any such future event occurs, and if not, then "upon the happening of any such contingency" which violates the rule, the trustee will be allowed to terminate the trust and distribute the corpus.

A statute embodying the "wait and see" doctrine has been adopted in England, Perpetuities and Accumulations Act, 1964, c. 55, § 3(1), and in some of the states, *see, e.g.,* Ky. Rev. Stat. § 381.216 (1972); Vt. Stat. Ann. Tit. 27, § 501 (1975). But a majority of the states, including Virginia, apply the common law rule in its orthodox form. 6 *American Law of Property* § 25.1 (Casner ed. 1952). As respondents tacitly acknowledge, the "wait and see" rule is actuated by the possibility of timeliness. The common law rule is actuated by the possibility of remoteness. *Burruss* v. *Baldwin, supra,* 199 Va. at 887, 103 S.E.2d at 252. Absent statutory mandate, we reject the "wait and see" rule and adhere to the common law rule.[2]

■ Turning to respondents' first rationale, we examine the chancellor's ruling that paragraph 8 "saved" the residuary clause.

---

[2]In some states, courts are authorized by *cy pres* statutes to uphold a contingent interest which violates the rule against perpetuities if, and to the extent that, the instrument creating the interest can be reformed or construed within the limits of the rule to give substantial effect to what can be determined to be the general intent of the creator of the interest. *See, e.g.,* Cal. Civ. Code § 715.5 (Deering Supp. 1964). But we have held that Virginia's *cy pres* statute concerning charitable trusts, Code § 55-31, cannot be used to "impair or set at naught the rule against perpetuities." *Shenandoah Valley Nat'l Bk.* v. *Taylor,* 192 Va. 135, 149, 63 S.E.2d 786, 795 (1951), cited with approval, *United Virginia Bank* v. *Union Oil,* 214 Va. 48, 52, 197 S.E.2d 174, 177 (1973).

The rule against perpetuities "is a rule adopted in furtherance of public policy to prevent excessive restraints or limitations upon the alienation of an estate." *Burruss* v. *Baldwin, supra.* The language of the Woodward will leaves nothing ambiguous about the possibility of remoteness or the thrust of testamentary intent. The testatrix intended to forbid alienation of her residuary estate until her youngest grandchild, living at the time of her death or later born, reached the age of 25 years. Nor can there be any doubt that she attempted to do so knowing that what she attempted posed the possibility of remoteness and constituted a violation of the rule as applied "in the state of [her] domicile". She knew, too, that what she attempted would succeed so long as her will was not challenged in court.

Against the hazard of such a challenge, she added a "savings clause". That clause provides that if "the vesting of any interest hereunder may occur after the expiration of . . . [the period permitted by the rule], then upon the happening of any such contingency such portion of my estate shall not be held in further trust but shall be paid over absolutely". Manifestly, the testatrix's deliberate purpose was to violate but, if possible, evade the effect of the rule against perpetuities, and if the rule were ever invoked, to rewrite the rule so that it would be actuated only upon the "happening" of an event which made remoteness an inevitability. But, as we have said, the rule is actuated by the *possibility* of remoteness, and that possibility must be determined as of the date of the testatrix's death.

The savings clause was patterned after a model form found in Rabkin & Johnson, 3 *Current Legal Forms*, Form 8.24(30). Indeed, with one exception, the language was identical. The Woodward clause provided that, upon the happening of a contingency that violated the rule against perpetuities, the corpus would be paid "to the person or persons to whom, and in the proportions in which, such portion would ultimately go under the provisions hereof"; the model form provided that in such event the corpus would be paid to those to whom "the income therefrom was then payable." While we do not decide what impact the model form might have had if its exact language had been employed in the Woodward will, we do note that the effect of such language is to fix the date for determining the remaindermen at a time within the term permitted by the rule against perpetuities. The language of the Woodward will, on

the other hand, fixes the date at a time which could fall beyond the end of that term, for it identifies the remaindermen as those to whom the corpus "would ultimately go under the provisions hereof." Under the provisions of paragraph 3, the interests of the grandchild-remaindermen would be void for remoteness.[3] A "savings clause" cannot save a void interest by adopting the very provisions which make it void.

Yet, insisting that we need not construe the language of paragraph 8 as adopting the provisions of paragraph 3, respondents rely upon *Jewett* v. *Harvie*, 183 Va. 734, 746-47, 33 S.E.2d 213, 218 (1945), where we said:

> "Where one construction of the will will be void because of perpetuity and another construction of the will is valid, the court sustains the construction which maintains the validity of the will."

*Jewett* did not adopt that language as a universal rule. It was applied specifically to uphold a remainder which was made contingent upon either of two events. The remainder had vested under one contingency, and we held that the vested estate could not be defeated by the fact that the other contingency might have violated the rule against perpetuities. Here, where there is but one contingency, and it violates the rule, that holding does not apply.

■ Invoking the principle that testamentary intent "is the 'Pole star' and 'sovereign guide' in construction of a will", respondents say that, even if the original testamentary design violated the rule, the "overriding" testamentary intent was to avoid a violation and that we should give effect to such intent in obedience to the maxim that the law does not favor intestacy. As we have indicated, we believe that the testatrix's dominant intent was to violate the rule against perpetuities with the hope that the violation would never be challenged and that the savings clause would never have to be applied.

The whole function of the rule is to defeat testamentary intent to violate its mandate.

---

[3] Respondents earnestly contend that the words "provisions hereof" refer only to the provisions of paragraph 8 and that "the ultimate beneficiaries are those persons who take at the end of the maximum legally permissible time without violating the rule". We disagree. The words "provisions hereof", like the words "any interest hereunder", clearly refer to all of the interests created and the provisions made in all of the paragraphs of the residuary clause, including especially those in paragraph 3.

"The Rule against Perpetuities is not a rule of construction, but a peremptory command of law. It is not, like a rule of construction, a test, more or less artificial, to determine intention. Its object is to defeat intention. Therefore every provision in a will or settlement is to be construed as if the Rule did not exist, and then to the provision so construed the Rule is to be remorselessly applied." Gray, *The Rule Against Perpetuities* § 629 (4th ed. 1942).

*See also Rose* v. *Rose,* 191 Va. 171, 179, 60 S.E.2d 45, 48 (1950).

When the maxim that the law does not favor intestacy collides with the "public policy to prevent excessive restraints or limitations upon the alienation of an estate", *Burruss* v. *Baldwin, supra,* the former must yield.

Respondents cite several cases decided in other jurisdictions which uphold savings clauses.[4] Those clauses and the testamentary gifts to which they were applied are wholly unlike those before us, and we neither endorse nor reject the reasoning applied or the result reached in those cases.

Nor do we intend to imply that all savings clauses are inherently ineffectual in Virginia. If the language of a will leaves it ambiguous whether there is a possibility of remoteness, then a savings clause may be effective. But where, as here, the language reasonably permits no construction but that remoteness is a possibility, the use of a savings clause only reinforces the conclusion that the paramount testamentary intent was to violate the very rule which condemns such intent.

Accordingly, we hold that paragraph 8 of the residuary clause in the Woodward will did not save the remainder interests granted by paragraph 3 to the children (or descendants) of the testatrix's sons.

■ Finally, we consider whether the failure of these interests caused the other interests created by the residuary clause to fail.

Arguing the negative, respondents cite *White* v. *National Bank,* 212 Va. 568, 186 S.E.2d 21 (1972). There, the will established a trust to terminate 25 years after the testatrix's death. If living on that date, John Henry White, one of the

---

[4]*Cennamo* v. *American Security & Trust Co.,* 360 F. Supp. 1354 (D.D.C. 1973), *modified sub nom. In re Estate of Burrough,* 521 F.2d 277 (D.C. Cir. 1975); *Stellings* v. *Autry,* 257 N. C. 303, 126 S.E.2d 140 (1962); *Nelson* v. *Mercantile Trust Co.,* 335 S.W.2d 167 (Mo. 1960); *In re Lee's Estate,* 49 Wash. 2d 254, 299 P.2d 1066 (1956).

beneficiaries of the income, was to receive a share of the corpus; if not, his share was to be paid to "his heirs and distributees, per stirpes." We held that those heirs were to be determined as of the date of White's death (rather than the date of the termination of the trust) and that even if White should die before the trust terminated, their interests did not offend the rule. In the course of our opinion, we noted that both the income and remainder interests granted White "must necessarily vest in him, if at all, during the life of a 'life in being'" and that consequently both of his interests were valid. *Id.*, 212 Va. at 570-71, 186 S.E.2d at 23. Since neither White's interests nor those of his heirs violated the rule against perpetuities, it was not necessary to decide, and we did not decide, whether White's interests would have failed if the interests of the heirs had been void. The case does not, therefore, support respondents' argument.

Respondents also rely upon the following language from 61 Am. Jur. 2d *Perpetuities* § 91:

> "Where the devise or grant is in such terms as standing alone would convey a fee, but there is also an attempt to create a limitation over which is void for remoteness, the prior estate will take effect as a fee, divested of the void limitation, according to the terms of the devise or grant. For example, where a devise is made to a man and his heirs forever, and for want of such heirs then to a stranger in fee, the devise over to the stranger would be void for remoteness, and the first taker will have a fee simple absolute."

As respondents point out, the principle inherent in this language was applied in *Rose* v. *Rose, supra*, to a deed which conveyed property to "Otto R. Wachsman and his children and their children" and in *Nixon* v. *Rose*, 53 Va. (12 Gratt.) 425 (1855), where a will created a trust for "Emily Coupland or her heirs". The Woodward will makes no "devise . . . in such terms as standing alone would convey a fee" and the principle respondents invoke is altogether inapposite.

As authority for their position that the remote remainders invalidate the anterior estates, complainants rely upon *Burruss* v. *Baldwin, supra; Prichard* v. *Prichard*, 91 W. Va. 398, 113 S.E. 256 (1922); and *Closset* v. *Burtchaell*, 112 Or. 585, 230 P. 554 (1924). But the critical inquiry in those cases was the possibility

of remoteness in class gifts; the opinions did not address the question of the effect of a void remainder on an anterior estate. Complainants also cite *Andrews* v. *Lincoln*, 95 Me. 541, 50 A. 898 (1901), and *Johnston's Estate*, 185 Pa. 179, 39 A. 879 (1898). The latter decision has been harshly criticized as "difficult to maintain." Gray, *The Rule Against Perpetuities* § 249.2 (4th ed. 1942). Apparently, the court in *Andrews* considered it was dealing with a class gift when, in fact, what was involved were successive interests. We find no guidance in these cases.

Indeed, neither party has cited a case we consider controlling. The cases discovered in our research are conflicting, but the conflicts result not so much from jurisprudential differences as from factual, syntactical, and statutory diversity. We have concluded that the most succinct exposition of the general rule is that found in 28 A.L.R. *Prior Estate-Remainder Void for Remoteness* 375, supp. 75 A.L.R. 124, 168 A.L.R. 321:

> "The general rule is that a remainder which is void because in violation of the rule against perpetuities does not necessarily render invalid the prior estate, but that the latter will be sustained notwithstanding the invalidity of the ulterior estate, where the two are not inseparable and dependent parts of a general testamentary scheme, and to uphold the one without the other would not defeat the primary or dominant purpose of the testator. . . ."

*See also* Simes and Smith, *The Law of Future Interests* § 1262 (2d ed. 1956); 70 C.J.S. *Perpetuities* § 21.

Unless infected by the invalidity of the ulterior estates, the anterior estates created by the residuary clause of the Woodward will are valid: the income interest of the son will vest, if at all, within his lifetime; the income interests of the "surviving wife" of the son and his children will vest, if at all, not later than the death of the son; and the son's interest in the corpus will vest, if at all, within his lifetime.[5] Under the rule quoted above, these anterior estates are not infected by the

---

[5] It is possible that the son's interest in the corpus will never vest. That interest vests only if the son is living when his youngest child reaches 25 years of age, and since the law presumes that the son may have a child in gestation at his death, vesting cannot be determined until the death of the son. So too, the income interests of his wife and children may never vest, for those interests vest only if they survive the son and the son dies before his youngest child reaches 25 years of age.

invalidity of the ulterior estates when "the two are not inseparable and dependent parts of a general testamentary scheme, and to uphold the one without the other would not defeat the primary or dominant purpose" of the testatrix.

As reflected in the will as a whole, the testatrix's "general testamentary scheme" was to make roughly equivalent provision for her three children and their descendants. In Article Seven, she created a specific trust for the benefit of her daughter and her daughter's children, and in Article Eight she created residuary trusts for her two sons and their descendants. If the invalidity of the ulterior interests infects the anterior interests, the entire residuary estate will pass by intestacy. In such case, the daughter would receive a portion of the estate intended for the sons and their descendants. This would effectively thwart the general testamentary scheme and defeat what we perceive to be the primary or dominant purpose of the testatrix. Clearly, with respect to her residuary estate, the testatrix's dominant purpose was to make available, during the critical period her grandchildren were to be reared and educated, not only the income from the trust but also such portion of the corpus as might be necessary for "support, comfort and education". Only after the expiration of that critical period was the corpus to be distributed and, then, only what had not been consumed.

We are of opinion that the anterior and ulterior estates were not "inseparable and dependent parts" of the general testamentary scheme and that to uphold the former would not defeat but, rather, would substantially promote the "primary or dominant purpose" of the testatrix.

We hold, therefore, that the anterior estates which, as we have said, will vest, if at all, within the term permitted by the rule against perpetuities, are not infected by the invalidity of the ulterior estates. We will reverse the final decree insofar as it upholds the remote remainders and affirm the final decree insofar as it upholds the other estates created by the residuary clause. And this cause will be remanded with instructions to restore it to the docket and enter a new decree consistent with this opinion.

*Reversed in part,*
*affirmed in part,*
*and remanded.*