# Richmond

## United Virginia Bank/Citizens & Marine, Exec., Etc. v. Union Oil Company of California, Et Al.

June 11, 1973.

Record No. 8114.

Present, All the Justices.

*Donald N. Patten* (*Patten & Wornom,* on brief), for plaintiff in error.

W. *Glover Garner, Jr.* (*Robert W. Curran; Robert R. Hatten; Marshall, Blalock, Garner & Millner,* on brief), for defendants in error.

CARRICO, J., delivered the opinion of the court.

The question for decision in this appeal is whether the provisions of a land option agreement violate the rule against perpetuities. For reasons to be later discussed, we hold that the rule is violated.

The question arose in a declaratory judgment proceeding brought by United Virginia Bank/Citizens & Marine (hereafter, the Bank), executor and trustee under the last will and testament of William Jonathan Abbitt, deceased, against Union Oil Company of California and Sanford & Charles, Inc. (hereafter, Sanford). The Bank sought a declaration that an option agreement entered into by Abbitt during his lifetime was void and unenforceable on the ground it was in violation of the rule against perpetuities. The trial court held that the agreement was valid and enforceable, and the Bank appeals.

The agreement in question was entered into on April 7, 1966, between Abbitt and Union Oil Company of California. It was later assigned by Union Oil to Sanford, the active appellee here. It granted the optionee the right and option to purchase a parcel of land 200 feet by 200 feet at the northwest corner of an intersection to be formed by two highways, "Boxley Boulevard Extension and new U.S. 60," proposed to be constructed in the city of Newport News.

The option was granted for a period of 120 days. However, the agreement provided as follows:

"It is expressly understood that the 120 days option period shall begin at the time the City of Newport News, Virginia acquires the right of way of Boxley Boulevard Extension and new U.S. 60."

It is this provision which is the focal point of the controversy between the parties, the Bank contending that it results in a violation of the rule against perpetuities and Sanford insisting that it does not. Resolution of the controversy requires an examination of the status of "Boxley Boulevard Extension and new U.S. 60" at the time the option agreement was executed.

The only witness to testify in the court below on the status of the proposed highways was W. H. Gordon, Jr., chief engineer of the city's traffic and transportation division. From his testimony and

various exhibits introduced at trial, it appears that "Boxley Boulevard Extension and new U.S. 60" were shown on the major thoroughfare plan of the city of Newport News. The plan was adopted by the city planning commission in 1962 but was not approved by the city council until July, 1968, more than two years after the option agreement here in dispute was executed.

Gordon described the major thoroughfare plan as "a broad brush" proposition, the location of the proposed highways being a matter of drawing lines upon a map. He stated that the plan showed the highways proposed for construction in the city based upon an anticipated need expected to exist at a point in time 25 years in the future. The witness said that although the contemplated completion date was 1985 or, at the latest, January, 1987, the fixing of such a target date "does not indicate that it will absolutely" be met because conditions change and revisions of the plan are required. When asked whether on April 7, 1966, the date the option agreement in question was executed, it could have been determined when the proposed highways would be completed, he replied, "Absolutely not."

Although the city council did not approve the major thoroughfare plan until July, 1968, it did in August, 1966, several months after the option agreement under consideration was executed, request the state highway department to proceed with construction of "new U.S. 60," one of the proposed highways mentioned in the agreement. This highway was planned as a city-state-federal project. The state highway department was to acquire the right-of-way, and upon completion of the project and settlement of all land acquisition problems, the right-of-way was to be conveyed to the city. At the time of trial in 1971, the new road was under construction and due to be completed in late 1972 or early 1973.

However, the status of the other highway mentioned in the option agreement, "Boxley Boulevard Extension" bordering the optioned property, was another matter. This highway was not to be a public project but instead was proposed by the city planners to be constructed by the private owners through whose property it would pass, the right-of-way to be conveyed to the city after completion of construction. Gordon, the city's traffic engineer, was asked at trial when the highway would be constructed. He replied, "Hopefully it would be by 1985."

The Bank contends that the provisions of the agreement in question, making exercise of the option contingent upon acquisition by

the city of the rights-of-way of the proposed highways, violates the rule against perpetuities. The Bank says that on April 7, 1966, the date the agreement was executed, "it was not known when, if ever, the City would acquire the rights-of-way for either of [the] proposed thoroughfares." Therefore, the Bank argues, there was "every possibility" that the option might not expire within the period prescribed by the rule against perpetuities.

Sanford contends, on the other hand, that since the proposed highways were shown on the major thoroughfare plan and were contemplated to be completed at the latest by January, 1987, or within 21 years from April 7, 1966, the date of the option agreement, the limitation created by the agreement did not violate the rule against perpetuities. Alternatively, Sanford contends that if the agreement "poses a technical violation of the rule," we should hold the rule inapplicable to option contracts.

■ We dispose first of Sanford's alternative contention that the rule against perpetuities should be held inapplicable to option contracts. To so hold, we would have to overrule our decision in *Skeen v. Clinchfield Coal Corp.*, 137 Va. 397, 119 S.E. 89 (1923). While the reasoning of *Skeen* has been the subject of some criticism, the case clearly establishes, and we think properly so, the proposition that option contracts are unenforceable if they do not necessarily expire within the period fixed by the rule against perpetuities. In addition, it is generally recognized that the rule against perpetuities is properly applicable to option contracts. 4 Restatement of Property, § 393, comment *a* at 2316 (1944). So we decline to depart from our holding in *Skeen*.

■ A preliminary matter requires attention. We must determine what period is to be employed in testing the validity of the limitation created by the option agreement under consideration. Ordinarily, the rule against perpetuities is expressed in terms of the necessity of an interest vesting within a period measured by a life or lives in being plus 21 years and 10 months. But here, the optionee is a corporate, not a human, entity, and the parties have not contracted with reference to a life or lives in being, but rather with reference to an event contemplated to occur sometime in the future. In such circumstances, a gross term of 21 years is the determinative period. *Barton v. Thaw*, 246 Pa. 348, 355, 92 A. 312, 314 (1914).

As applied to an option agreement, the rule against perpetuities requires that the option must be exercised, if at all, within the period

fixed by the rule. If there exists at the time the agreement is entered into a possibility that exercise of the option might be postponed beyond the prescribed period, the agreement is invalid because it is in violation of the rule.

The question becomes, therefore, whether there existed at the time the option agreement was entered into in this case a possibility that exercise of the option might be postponed beyond a period of 21 years from the date of the agreement.

Turning to the option agreement itself, it is clear that the parties intended that the optionee would exercise the option, if at all, only upon occurrence of the specific contingency set up in the agreement, that is, the acquisition by the city of the rights-of-way of the proposed highways. It is equally as clear, from the agreement and the surrounding circumstances, that on the date the agreement was executed there existed the distinct possibility that the specified contingency might not occur until after expiration of a period of 21 years from the date of the agreement.

Sanford argues, however, that it was "the dominant intent" of the parties to the option agreement that the city would acquire the rights-of-way in question, if at all, within a reasonable time and that such time "under the circumstances of this case is less than 21 years." This being true, Sanford asserts, we should exercise the *cy pres* power of the judiciary and imply into the terms of the option agreement a provision that the contingency of the city's acquisition of the rights-of-way would occur within a reasonable time not more than 21 years from the date of the agreement. This, Sanford concludes, would effectuate the intention of the parties and avoid a construction of the agreement which would violate the rule against perpetuities.

The answer to this argument is three-fold. In the first place, "the dominant intent" Sanford refers to does not appear from the option agreement itself or from any other source. Secondly, the asserted intent relates to acts which parties other than those privy to the agreement must perform to bring about occurrence of the agreed contingency. So whatever may have been the intent of the contracting parties, it is of little moment. Lastly, assuming, without deciding, that the power of *cy pres* is otherwise available in a case such as this, it may not be employed in Virginia as a vehicle to alter an agreement so as to evade the rule against perpetuities. *Shenandoah Valley Nat'l Bk.* v. *Taylor*, 192 Va. 135, 149, 63 S.E.2d 786, 795 (1951).

Sanford relies upon the case of *Isen* v. *Giant Food, Inc.*, 295 F.2d 136 (D.C. Cir. 1961), a decision interpreting Virginia law, as authority for the argument that we should imply a reasonable time provision into the option agreement under consideration. *Isen* is, however, factually and legally different from the case at bar, and so it is not persuasive here.

Sanford next urges us to adopt the "wait and see" doctrine which has been legislatively enacted into the law of several states and judicially applied in others. Under this doctrine, the rule against perpetuities is determined to have been violated or not by taking into consideration events which occur after the period fixed by the rule has commenced. If, upon a later look, the event upon which an interest was made contingent is found to have occurred and the interest has vested or has become certain to vest within the period fixed by the rule, the rule is held not to have been violated.

Sanford does not tell us what effect adoption of the "wait and see" doctrine would have upon this case. Presumably, Sanford would say that because "new U.S. 60" is now completed or is nearing completion, we can look at this late development and see that the contingency set up in the option agreement has been or soon will be satisfied at a time within the period fixed by the rule against perpetuities. If that be Sanford's position, it overlooks the fact that the record shows nothing to have yet occurred concerning "Boxley Boulevard Extension" bordering the optioned property, an integral part of the contingency.

But aside from that, the established rule in Virginia, to which we adhere, is that a perpetuities problem may not be solved by resort to what occurs after commencement of the period fixed by the rule. In *Claiborne* v. *Wilson*, 168 Va. 469, 474, 192 S.E. 585, 586 (1937), we said, speaking of perpetuities cases:

" 'Nor is it material in such cases how the fact actually turns out. The possibility that the event may, in point of time, exceed the limits allowed, vitiates the limitation *ab initio.*' "

■ Finally, Sanford contends that if we should decide, as we do, that the option agreement violates the rule against perpetuities, it is nevertheless entitled to recover damages for breach of contract, and it asks us to remand the case for a hearing on damages. However, an agreement in violation of the rule against perpetuities is void

*ab initio.* To allow recovery of damages for the failure of an optionor to comply with such an agreement would have the effect of compelling performance of an invalid contract and would, at the same time, act as a restraint upon alienation. We conclude, therefore, that damages are not allowable in such a case. 1 R. Minor, The Law of Real Property, § 823, at 1064 (2d ed. 1928); 4 Restatement of Property, § 393, comment *h* at 2320 (1944).

For the reasons assigned, we hold the option agreement of April 7, 1966, in violation of the rule against perpetuities and, therefore, invalid and unenforceable. Accordingly, the judgment of the trial court will be reversed and final judgment will be entered here declaring the agreement void.

*Reversed and final judgment.*