THE RYLAND GROUP, INC.

V.

P. REED WILLS, TRUSTEE, ETC., ET AL.

Record No. 820870

Decided June 14, 1985, at Richmond

*John P. Ellis (Thomas Q. Sullivan; Schwartz and Ellis, Ltd.,* on briefs), for appellants.

*Joseph E. Bankert; R. Mark Dare (John P. Rowley, III; Brock & Bankert; Hazel, Beckhorn and Hanes,* on briefs), for appellees.

COCHRAN, J., delivered the opinion of the Court.

The question for determination in this appeal is whether the contract giving rise to the litigation violated the rule against perpetuities and therefore was void.

The Ryland Group, Inc. (Ryland), filed a motion for judgment in the trial court against P. Reed Wills as trustee, P. Reed Wills and Joanne T. Wills individually, and Wills Investment, Inc. (collectively, the Wills), and Capital Homes, Inc. (Capital). Ryland alleged, in three counts, breach of contract and fraud and misrepresentation by the Wills and interference with contract by the Wills and Capital. Ryland sought to recover compensatory and punitive damages under each of the three counts. The trial court sustained Capital's demurrer to the third count, ruling that the contract in issue violated the rule against perpetuities and therefore was void *ab initio*. With leave of court, Ryland amended its motion for judgment to allege, in addition to the allegations previously asserted, that the parties intended the contract to be valid, and to add a count seeking reformation of the contract on the ground of mistake if the contract failed to provide for termination in time to avoid the rule against perpetuities. By order entered February 19, 1982, the court sustained demurrers filed by the Wills and Capital to the amended motion for judgment and dismissed the action with prejudice.

The effect of the demurrers, of course, was to admit as true all material facts that were well pleaded. In passing on the validity of the demurrers, the court was required to consider all reasonable inferences of fact which fairly and justly could be drawn from the facts alleged. *See Chippenham Manor* v. *Dervishian*, 214 Va. 448, 450, 201 S.E.2d 794, 796 (1974). We are guided by the same principles in our review of the allegations in the amended motion for judgment.

During the period April 10, 1978, until December 1979, Wills owned a beneficial interest in four sections of a proposed subdivision. By agreement dated April 10, 1978, Ryland, as purchaser, agreed to buy and P. Reed Wills, Trustee and/or Assigns, as seller, agreed to sell at a specified price three model lots in the subdivision. Settlement was to be held upon completion of certain work by the seller, receipt of building permits by the purchaser, and the parties' obtaining certification from governmental authorities of availability of sewer and water and approval by the Veterans Administration. Under the agreement, Ryland acquired an option to purchase 255 additional lots in the same four sections of

the subdivision. The seller agreed to develop the lots by installing various facilities, including sewers, storm drainage systems, water connections, curbs, gutters, sidewalks, streets, street lights, and street signs.

No provision was made for settlement on or before a specified date, but the agreement stated that time was of the essence. Under Section 2.03, entitled "Development Schedule," the seller was required to complete the necessary development work but no deadline was specified. Under Section 2.04, entitled "RYLAND'S Pace," the seller could terminate the option granted to Ryland if Ryland failed to purchase a specified number of lots per quarter, the first quarter commencing 60 days after purchase of the three model lots. If the seller failed to develop lots within the times specified in Section 2.03 (none were specified), times for Ryland's purchases were to be postponed for periods equal to the delay. Section 2.04 further provided as follows:

> No subsequent quarterly pickup requirement shall end nor any subsequent quarterly pickup requirement begin if the SELLER shall not have developed for immediate purchase by RYLAND a number of lots equal to RYLAND'S scheduled pickup in the quarter subsequent to the current quarter.

Section 2.05, entitled "Settlement," provided:

> RYLAND shall settle for lots within thirty (30) days of RYLAND'S commitment to purchase any such lot, or the development thereof by SELLER as set forth in Article III, whichever shall last occur.

Section 2.06, entitled "Expiration," provided that the options would expire December 31, 1980.

Exhibit B, attached to the agreement, set forth the purchase price for the three model lots, provided that a minimum of 18 lots would be purchased by Ryland each quarter, and listed the purchase price for each of the 18 lots to be purchased each quarter for 13 quarters and each of the 21 lots to be purchased in the 14th quarterly acquisition. By addendum dated June 9, 1978, it was provided that the "first quarterly takedown" by Ryland would commence 90 days after purchase of the model lots rather than 60 days, and the purchase prices were increased as to certain lots. Another addendum, dated July 16, 1979, also provided that the

first quarterly takedown would commence 90 days after purchase of the model lots and increased the listed purchase prices for the model lots and for the other 255 lots.

By deed dated June 28, 1978, all the lots were conveyed to Wills Investment, Inc., a corporation organized and wholly owned by P. Reed Wills and Joanne T. Wills. Wills Investment, Inc., conveyed certain lots in section four of the proposed subdivision to Ryland in accordance with the option agreement. In December of 1979, however, Wills Investment, Inc., conveyed all the lots in sections one, two, and three to Capital.[1]

In its amended motion for judgment, Ryland alleged in the first count that this last conveyance constituted a partial breach of the option agreement by the Wills. Ryland alleged in its second count that the Wills intentionally misrepresented to Ryland their ability to convey title to the lots at a time when they were negotiating to sell the lots to Capital. Ryland alleged in its third count that the Wills and Capital, with actual and constructive notice of Ryland's option rights, caused the sale to be made to Capital in willful and malicious interference with the option agreement. In its fourth count, Ryland asked for reformation of the contract.

Prior to amendment in 1982, the rule against perpetuities required that interests in property must vest, if at all, within the period fixed by the rule.[2] *Shirley* v. *Van Every*, 159 Va. 762, 776, 167 S.E. 345, 350 (1933). Normally, the period is a life or lives in being plus 21 years and 10 months. However, where the parties are corporate entities and do not contract with reference to a life or lives in being, the determinative period is 21 years from the date of creation of the interest. *United Virginia Bank* v. *Union Oil*, 214 Va. 48, 51, 197 S.E.2d 174, 177 (1973).

The rule against perpetuities is applicable to option contracts, which are unenforceable if they may not be exercised within the period of the rule. *Id.*, 197 S.E.2d at 176; *Skeen* v. *Clinchfield Coal Corp.*, 137 Va. 397, 403, 119 S.E. 89, 90 (1923).

---

[1] The pleadings do not indicate whether Ryland attempted to exercise the option to purchase these lots, or any of them, prior to their conveyance to Capital.

[2] Code § 55-13.3 (Supp. 1984) significantly modified the harsh rule against perpetuities by providing that no transfer of an interest in property will fail unless it *does not vest*, if at all, within the period of the rule. This enactment into law of what has been characterized as the "wait and see" doctrine, *see United Virginia Bank* v. *Union Oil*, 214 Va. 48, 53, 197 S.E.2d 174, 177 (1973), is not applicable in the present case which had been decided in the trial court when the new rule became effective. Acts 1982, c. 249.

An option contract creates no present vested interest; instead, the holder of an option has an executory interest by virtue of the possibility that he may obtain a future right to purchase certain property. *See Skeen*, 137 Va. at 406, 119 S.E. at 91; 1 R. Minor, The Law of Real Property § 823 (2d ed. 1928); 2 H. Tiffany, The Law of Real Property § 405 (3d ed. 1939 & Supp. 1985).

The trial judge, in his letter opinion stating the basis for sustaining Capital's demurrer to Ryland's original motion for judgment, noted the two aspects of the agreement. One aspect was an option to purchase, and the other, upon exercise of the option, became a contract for the purchase and sale of realty. The agreement fixed the period, less than three years after the date of the agreement, within which the option rights could be exercised by Ryland. Therefore, the judge's opinion was correct that the option to purchase did not violate the rule against perpetuities.

The trial judge further stated that while Ryland would acquire an equitable estate in a lot upon exercise of the option to purchase it, legal title would not vest until delivery of the deed at settlement. Since settlement might not occur until development had been completed and the judge concluded that development might be delayed more than 21 years, he was of the opinion that the contract violated the rule against perpetuities.

We agree that upon exercise of the option, Ryland would acquire an equitable interest in the lots it committed itself to purchase, with the right to compel conveyance of legal title. *See Carmichael* v. *Snyder*, 209 Va. 451, 455, 164 S.E.2d 703, 706 (1968); 2 R. Minor, *supra*, § 1190; 2 H. Tiffany, *supra*, § 407. Upon exercise of the option, the agreement would become an executory contract for the sale of land with mutuality of obligation and remedy. *Carter* v. *Hook*, 116 Va. 812, 817-18, 83 S.E. 386, 388 (1914). Such a contract creates an interest in land enforceable in equity and is therefore subject to the rule against perpetuities. *See Comstock* v. *Smith*, 255 Ark. 564, 566, 501 S.W.2d 617, 618 (1973); Restatement of Property § 401 comment b (1944); 61 Am. Jur.2d *Perpetuities and Restraints on Alienation* § 53 (1981).

We also agree that vesting of legal title is postponed until delivery of the deed at settlement. We do not agree, however, that vesting of legal title might not occur within the period of the rule against perpetuities.

Settled contract law implies a reasonable time limitation for performance of conditions in contracts for the sale of land where no time for performance is fixed by the contract itself. *Huselton* v. *Roop*, 215 Va. 127, 128-29, 207 S.E.2d 826, 827 (1974) (purchaser allowed reasonable time to obtain financing); 77 Am. Jur.2d *Vendor and Purchaser* § 7 (1975); 1 R. Minor, *supra*, § 531 (payment of consideration and delivery of deed required within reasonable time).

In the context of commercial leases, courts generally construe contracts to impose a requirement that conditions be performed within a reasonable time, finding that performance within 21 years satisfies this requirement. *See In Re Wonderfair Stores, Inc. of Arizona*, 511 F.2d 1206, 1213 (9th Cir. 1975) (reasonable time limitation for completion of building and approval of completed plans and specifications); *Isen* v. *Giant Food, Inc.*, 295 F.2d 136, 137-38 (D.C. Cir. 1961) (applying Virginia law) (zoning for commercial purposes must be obtained, if at all, within reasonable period); *Wong* v. *DiGrazia*, 60 Cal.2d 525, 540, 386 P.2d 817, 827, 35 Cal. Rptr. 241, 251 (1963) (contracting party breaches unless obtains building permit and completes construction within reasonable time, necessarily less than 21 years); *Singer Company* v. *Makad, Inc.*, 213 Kan. 725, 733, 518 P.2d 493, 499 (1974) (contract implies reasonable time for completion of construction).

At least one state has adopted the rationale of these lease cases in the context of contracts for the sale of land. In *Rodin* v. *Merritt*, 48 N.C. App. 64, 268 S.E.2d 539, *appeal denied*, 301 N.C. 402, 274 S.E.2d 226 (1980), the parties contracted for the sale of a tract of land which the purchaser intended to develop for commercial and residential use. Accordingly, the contract imposed conditions requiring the purchaser to cause the property to be annexed to the adjoining city and to be rezoned suitably for the planned development. The purchaser was also required to obtain state and local agency approvals and the necessary building permits for the comprehensive development. The agreement provided for closing of the sale 30 days following completion of these and other enumerated conditions. *Id.* at 67-68, 268 S.E.2d at 541.

The North Carolina court noted that, while the time period measured by "lives in being plus 21 years" was well adapted for the family transactions the rule was initially designed to limit, application of the rule against perpetuities and its arbitrary 21-year period to sophisticated, arms-length commercial transactions has

little relevance. *Id.* at 68, 268 S.E.2d at 542. In construing the contract at issue, the court endorsed the reasoning of *Wong* and held that the agreement required performance of the stated conditions within a reasonable time, a period which would not exceed 21 years. *Id.* at 68-70, 268 S.E.2d at 542-43. The court found that the parties did not intend the period of performance to extend beyond a reasonable time. *Id.* at 71-72, 268 S.E.2d at 543-44.

Similarly, this reasoning is applicable in the context of a contract for sale of residential lots to be developed as a subdivision. The Wills agreed to develop any lots for which Ryland exercised the option. The Wills were obligated to perform this duty within a reasonable time or be subject to remedies Ryland might pursue for the Wills' breach of the express terms of the contract. A reasonable time for completion of development would be far less than 21 years.

That the parties contemplated performance within a commercially reasonable period is demonstrated by their provision that time was of the essence of the contract. Their intent that the contract be completed within a period much shorter than 21 years is also reflected by the payment schedule attached to the contract as an exhibit and modified by two later addenda. The final version of the schedule required, as had the earlier versions, that payments be completed by the fourteenth quarter following purchase of the model lots. It is apparent, therefore, that the parties contemplated final settlement within less than four years of settlement on the model lots. Settlement on the model lots would occur upon completion, within a reasonable time, of the conditions imposed under the contract. These combined periods would be well within 21 years. The contract does not violate the rule against perpetuities, since any contingency would be performed, if at all, within the period permitted by the rule.

The holding of *United Virginia Bank* is not inconsistent with this result. Under the agreement at issue in that case, the optionee acquired an option to purchase land at the intersection of two highways proposed to be built in Newport News. 214 Va. at 49, 197 S.E.2d at 175. The option was to begin when the city acquired the rights-of-way upon completion of the proposed highways and was to expire 120 days later. When the contract was executed, the thoroughfare plan which proposed the two roads had received planning commission approval but had not been adopted by the city council. Although it was contemplated that the com-

pletion date would be not later than January of 1987, 20 years and nine months after the date of the option, there was no guarantee that either highway would be built. The state, with city, state, and federal funds, was to acquire the right-of-way and construct one highway; private owners were to construct the other. Upon completion, each right-of-way was to be conveyed to the city. *Id.* at 50, 197 S.E.2d at 175-76.

It was apparent from the option agreement that the parties intended that the option would be exercised only upon the city's acquisition of the two rights-of-way. We held that, on the date of the agreement, there existed the "distinct possibility" that this contingency might not occur for more than 21 years. *Id.* at 52, 197 S.E.2d at 177. Holding that this option violated the rule against perpetuities, we refused to construe the contract as imposing a requirement that the city acquire the rights-of-way within a reasonable time. Neither the agreement itself nor any other source revealed an intent of the contracting parties to impose such a limitation. Nor could such intent of the parties, had it existed, control a contingency to be performed by a party who was not privy to the agreement. *Id.* We refused to apply the reasoning of *Isen* because that case was "factually and legally different." *Id.* at 53, 197 S.E.2d at 177.

The problems of *United Virginia Bank*, however, are not presented by the present case. A contract for the development and sale of subdivision lots, while similar to the lease at issue in *Isen* and to the leases in other commercial development cases, is quite different from the option under review in *United Virginia Bank*. The contract between Ryland and the Wills demonstrates their intention that performance be completed within 21 years. Furthermore, no contingency depends on performance by non-contracting parties. Our interpretation of this contract does not alter the agreement; it merely effectuates an implied contract term which comports with the contracting parties' intent.

We believe the intent of the parties and the purposes to be accomplished by this agreement justify application of the settled principle that contract terms under the control of the parties must be performed within a reasonable time where the contract does not specify the time of performance. *See Rodin*, 48 N.C. App. at 72, 268 S.E.2d at 544. A reasonable time, as contemplated by the parties, would be well within 21 years; thus, the contract does not violate the rule. Accordingly, we hold that the trial court erred in

sustaining the demurrers to Ryland's amended motion for judgment.

Ryland argued three additional assignments of error, all of which embraced theories designed to save the contract if it violated the rule against perpetuities. Ruling as we do on the perpetuities question, we need not address the remaining issues.

We will reverse the judgment and remand the case for further proceedings consistent with this opinion.

*Reversed and remanded.*