# Long Signature Homes, Inc.

## v.

# Fairfield Woods, Inc.

Record No. 930890

June 10, 1994

Present: All the Justices

*Thomas P. Mains, Jr. (Mains & Mains*, on brief), for appellant.
*Ronald M. Maupin (Gardner & Maupin*, on brief), for appellee.

JUSTICE WHITING delivered the opinion of the Court.

In this declaratory judgment action, we decide whether a contract to sell building lots has been terminated due to an alleged impossibility of performance.

On June 18, 1987, Fairfield Woods, Inc. (the seller) and Long Signature Homes, Inc. (the purchaser) entered into a contract in which the seller agreed to develop, and the purchaser agreed to buy, 382 building lots in the seller's subdivision known as Fairfield Woods in Spotsylvania County (the County). The purchase of these lots was to take place over a period of approximately three and one-half years after Fairfield had complied with the conditions of the contract.

Paragraph 5 of the contract provided in pertinent part:

Purchaser's obligation to proceed to closing is contingent upon satisfaction of the following:

Purchaser receiving certification from the appropriate authorities of Spotsylvania County that there exist water, sewer and electric [facilities] of adequate size and capacity to service 382 single family dwellings . . . . Purchaser shall have the right to waive the aforementioned contingency and proceed to closing. In the event the aforementioned contingency is not satisfied within on [sic] year of the date hereof, Purchaser hall [sic] have the option to declare this contract null and void.

And paragraph 10(b) provided in pertinent part:

If Seller fails to satisfy any contingency at least 60 days prior to any settlement hereunder, Purchaser shall have the option to waive the contingency and proceed to closing, specifically enforce the terms of the contract if applicable or *delay the date for closing until 60 days after said contingency is satisfied (Delayed Closing)*. If closing is delayed by Purchaser due to the failure of a contingency, the per lot purchase price will not escalate beyond 2.5% per lot over the per lot purchase price paid in the prior closing.

(Emphasis added.)

When the contract was signed, the County had a sewer plant with sufficient capacity to serve the Fairfield Woods area; hence, both parties thought that public sewer would be available to serve the 382 lots. However, the County notified them by letter in August 1988 that the sewer plant serving this area of Spotsylvania County was approaching its maximum treatment capacity. The County further advised the parties that if houses were built on the lots of all recorded subdivision plats in the area, the plant would not have the capacity to serve all the additional houses. Accordingly, the County warned that it would provide sewer service up to the plant's capacity on a "first come, first serve" basis.

The parties closed on 40 lots in early August 1989, and were scheduled to close on 10 more lots a short time later. On August 21, the seller wrote the purchaser in pertinent part:

Since there are no sewer taps available beyond these lots, the contract between us which is contingent upon the availability of sewer cannot be fulfilled. Accordingly, this letter is to advise you that the contract is terminated for the ground beyond the ten lots because of the inability to meet the sewer contingency.

By letter of September 6, 1989, the purchaser responded that "[p]aragraph 5 of the contract refers to the contingency of the sanitary sewer; however, the only rights for termination in this paragraph are for the purchaser." Although the purchaser told the seller to "let me know if you have any questions or comments on this matter," the seller did not reply to the purchaser's letter.

The parties closed on the 10 lots on October 30, 1989. On September 19, 1990, the purchaser wrote to the seller asking for a completion schedule for the development of the next lots in Fairfield Woods. Two days later, the seller responded and referred the purchaser to its letter of September 6.

In October 1990, the purchaser filed this action seeking a declaratory judgment that the contract was still in effect and that the purchaser had the right to delay closing "without any escalation in price, for sixty days beyond the time all contingencies have been removed." The county administrator testified at a June 1992 hearing before the trial court that the County was not then planning to construct new facilities or to expand existing facilities to serve more lots in the planned subdivision. However, the administrator also testified that a "draft water and sewer master plan" to serve this area had been submitted, but not yet acted upon by the Board of Supervisors of Spotsylvania County.

Following that hearing and its consideration of memoranda from both parties, the court held that availability of public sewer was a condition precedent to the performance of the contract and found that "it is impossible to meet that condition now or in the near future." The court concluded that "further performance is impossible within a reasonable period of time," and found that "the contract is null and void and no longer enforceable by either party." The purchaser appeals.

At the outset, we review principles of contract law regarding impossibility of performance. In general, if a promisor's contractual performance is made impossible by a "change in character of something to which the contract related, or which by the

terms of the contract was made a necessary means of performance, the promisor will be excused, unless he . . . expressly agreed in the contract to assume the risk of performance." *Housing Auth. of the City of Bristol v. East Tennessee Light & Power Co.*, 183 Va. 64, 72, 31 S.E.2d 273, 276 (1944) (supervening loss of source of natural gas supply relieved supplier of future performance).

Ordinarily, a supervening condition that renders a promisor's performance temporarily impossible will not release him from the duty of performing, but will only suspend that obligation. Restatement (Second) of Contracts § 269 (1981); 18 Samuel Williston, *A Treatise on the Law of Contracts* § 1957, at 150 (3d ed. 1978). This general rule is inapplicable, however, if the delay will make the promisor's performance materially more burdensome. Restatement (Second) of Contracts § 269 (1981). In that instance, the promisor's duty of performance is discharged rather than suspended. *Id.* Nevertheless, as the comments to the Restatement point out, "[t]he rule stated in this Section is, of course, subject to contrary agreement." *Id.* at cmt. a.

Further, we note that although parties to real estate development contracts assume that their contracts will be performed within a commercially reasonable time period, this assumption, too, may be modified by contract. *See The Ryland Group, Inc. v. Wills*, 229 Va. 459, 465, 331 S.E.2d 399, 403 (1985). "Settled contract law implies a reasonable time limitation for performance of conditions in contracts for the sale of land *where no time for performance is fixed by the contract itself.*" *Id.* (Emphasis added.)

In this case, we will assume that the trial court correctly held that, at the time of the trial in June 1992, a reasonable time had passed for the removal of the contingency regarding the availability of sewer service. Nevertheless, we conclude that the seller's duty to perform was not discharged because the contract required the seller to perform even after the expiration of what would otherwise be a reasonable time period. Paragraph 10(b) provided that the purchaser could "delay the date for closing until 60 days after the contingency is satisfied." Thus, the seller assumed the risk of a more burdensome performance, even though that performance could be delayed for an unreasonable period of time. Hence, the court erred in holding that the seller's duty of performance was

discharged merely by the passage of a reasonable time after performance became temporarily impossible.

Although the seller assumed the risk that its performance might be delayed temporarily because of an inability to provide public sewer connections for the lots, it did not assume the risk that the County would never provide such connections. And, since the contract affects the alienability of land and the seller is a corporation, under the rule against perpetuities the seller's obligation to satisfy the contract contingencies and to convey the land cannot extend beyond 21 years from the date of the contract. *Wills*, 229 Va. at 463, 331 S.E.2d at 402. The county administrator's testimony supports the trial court's finding that the seller's performance of the contract is temporarily impossible. However, that testimony does not preclude the possibility that the County later will build new facilities or expand existing ones to provide sewage facilities sufficient for the remaining lots covered by the contract. Thus, the court erred in holding that the contract could no longer be enforced against the seller.

Accordingly, we will reverse the judgment of the trial court and will enter a declaratory judgment that the contract is still in effect and will continue in effect until the expiration of 21 years from June 18, 1987, but without prejudice to the seller's right to file a later action should the County decide that it will not provide such facilities within the remaining 21-year period.

*Reversed and final judgment.*