# CIRCUIT COURT OF THE CITY OF WINCHESTER

Elizabeth D. Hoover,
Executrix of the Estate of
Eileen Cather Orton

v.

Jane Dick Jolley et al.

April 7, 1998

Case No. (Chancery) 97-335

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court on the Executrix's bill of complaint seeking the direction of the court with respect to the administration of the decedent's estate and the construction of the decedent's will. The two questions presented are whether the federal estate tax should be apportioned among the bequests or paid from the residuary estate and whether a provision for the placement of flowers on certain designated graves created a valid trust.

Upon consideration of the provisions of the will and the parties' memoranda of authorities, the Court has made the following decision that:

1. The federal and state estate taxes are not to be apportioned among the specific bequests;

2. Pursuant to paragraph "Fifth" of the will, a flower trust with a term of twenty-one years will be created and funded with $150,000.00; and

3. The balance remaining in the residuary estate shall be distributed among the decedent's heirs at law.

*I. Findings of Fact*

The following material facts are not in dispute.

Petitioner, Elizabeth D. Hoover, is the Executrix of the Estate of Eileen Cather Orton, who died testate on January 31, 1997. The holographic will of Eileen Cather Orton dated July 11, 1987, and a codicil dated January 24, 1997, were duly probated in this Court on February 21, 1997. Petitioner qualified as executrix of the estate of Eileen Cather Orton on February 21, 1997.

Paragraph "First" of the will provides that "all my just debts are to be paid . . ." and paragraph "Second" of the will provides that: "My taxes are to be paid and cost of the administratrix [sic]."

Paragraph "Third" of the will provides that: "I give and bequeath one thousand dollars to Mount Hebron Cemetery situated in Winchester, Virginia, to be held in trust for the upkeep of the lot where I will be buried."

Paragraph "Fifth" of the will creates a flower trust. The validity of this provision is challenged as violating the rule against perpetuities, and it provides as follows:

> Fifth: I give, devise, and bequeath to the Farmers and Merchants National Bank, Winchester, Virginia, as trustee the sum of one hundred fifty thousand dollars (150,000.00) to be held in trust forever for the following purpose. My trustee is hereby directed to invest the principal, as restricted by law, in the exercise of their duties. I direct that the interest from this money take care of the amount Farmers and Merchants charges for services of this account and be used to provide flowers on the graves of Charles H. Cather, Inez M. Cather, and Ada J. Darney at Easter, Memorial Day, and Christmas. On the graves of Thomas Daniel Cather, Ottie Mercelia Dick Cather, one large arrangement and on the grave of Eileen Cather Orton one large arrangement. These are to be fresh floral arrangements put on each weekend and also Easter, Memorial Day, and Christmas. If at any time the interest rate drops low and there isn't enough money to do as I have asked, use the interest for the flowers on the most important graves which are, Thomas Daniel Cather, Ottie Mercelia Dick Cather, and Eileen Cather Orton.

The testatrix then proceeded to make numerous specific bequests to various individual beneficiaries.

Paragraph "Eighteen" is the residuary clause of the will, and it provides that:

After my estate is settled should there be any money left I have not mentioned where it is to go, add this to the one hundred and fifty thousand trust to be used for flowers on the graves mentioned above.

The assets of the estate of Eileen Cather Orton as of February 21, 1997, the date of the filing of the Inventory, were reported to total $1,405,002.27. The estate taxes, which have been paid, totaled $279,872.00.

The total amount of cash bequests under the will and codicil is $737,000.00, which includes the $150,000.00 "flower trust." The current estimated amount of the residuary estate, not including additional receipts, disbursements, or commissions for the executrix, is approximately $312,618.00.

At the time of her death, Eileen Cather Orton was unmarried and had no direct descendants. She was not survived by any parents or grandparents. The known heirs at law of Eileen Cather Orton are all collateral kindred and are as follows: Jane Dick Jolley, Elizabeth L. Hoover, Linda L. Grant, Mary L. Jones, Alice L. Alt, Connie L. Whitacre, Martha W. Rees, Cora Dick Darnell, Kimberly Dick Richardson, Margaret Dick Seal, C. Gregory Dick, John M. Dick, Thomas J. Dick, J. Benjamin Dick, Susan Dick Turnbull, Ann Claire Dick Morrison, Cecilia Dick Burton, Ann Dick Edmondson, L. Mitchell Dick, Donnie L. Dick, and James E. Dick.

## II. *Conclusions of Law*

### A. *Estate Taxes*

The Virginia Supreme Court reviewed the doctrine of apportionment of estate taxes *vis a vis* the language of the will in *Lynchburg College v. Central Fid. Bank*, 242 Va. 292, 296-299, 410 S.E.2d 617 (1991):

In Virginia, all the debts and liabilities of a testator must be paid before any bequests can be effectual; the first mandate of a will is that the testator's just debts should be paid promptly. *Edmunds v. Scott*, 78 Va. 720, 726 (1884). When legacies are to be used to pay debts, the residuary legacy is liable first. *Id.* at 729.

Without an apportionment statute, the burden of estate taxes, unless otherwise directed by the testator, would fall upon the residuary estate, which ordinarily benefits the natural objects of the testator's generosity. To correct this apparent inequity, Virginia, along with a number of other states, has enacted an apportionment statute. The statute, Code § 64.1-161, is based on the principle that estate taxes should be equitably apportioned among the taxable legatees. *Alexandria Nat'l Bank*, 213 Va. at 625, 194 S.E.2d at 727.

The statute provides that estate taxes assessed upon an estate shall be charged against the share of each beneficiary of the estate in the proportion that the value of the beneficiary's interest bears to the total value of the estate, "except that in making such proration each such person shall have the benefit of any exemptions, deductions and exclusions allowed by ... law in respect of such person or the property passing to him." § 64.1-161.

The statutes dealing with apportionment, found in Article 7, Chapter 6 of Title 64.1 of the Code, expressly preserve, however, "the right of a testator to designate such parts of his assets as he desires to bear the burden of all taxes." *Baylor*, 194 Va. at 7, 72 S.E.2d at 285. Code § 64.1-165, the anti-apportionment statute, provides in pertinent part: "But it is expressly provided that the foregoing provisions of this article are subject to the following qualification, that none of such provisions shall in any way impair the right or power of any person by will ... to make direction [for] the payment of such estate or inheritance taxes and to designate the fund or funds or property out of which such payment shall be made; and in every case the provisions of the will ... shall be given effect to the same extent as if this article had not been enacted."

In *Lynchburg College, supra*, the decedent provided in the first paragraph of his will that "my just debts and all expenses of the administration of my estate, including such taxes as may be levied against my estate, [be] paid as soon after my death as practicable." The Virginia Supreme Court ruled that this language was sufficient to meet the requirements of Virginia's anti-apportionment statute. *Id.* at 295. The Court followed its earlier ruling in *Baylor v. National Bank of Commerce*, 194 Va. 1, 72 S.E.2d 282 (1952), and the majority rule regarding "tax clauses":

Where there is no express designation of the fund which is to be burdened with taxes but there is a general direction to the executor to

pay all debts, expenses, and taxes, there is an implied direction that the taxes are to be paid from the fund which also bears the burden of debts and expenses.

*Lynchburg College*, 242 Va. at 298 (quoting Annotation, *Construction and Effect of Will Provisions Relating to the Burden of Estate or Inheritance Taxes*, 69 A.L.R.3d 122, 130, 445 (1976 and Supp. 1991)).

A testatrix may specify the manner in which her debts are to be paid and the order in which the classes of her property are subject to her debts and the payment of taxes, and these express provisions take precedence over the statutory apportionment provisions, so long as the debts are so paid, and provision is made for the payment of any taxes due on the estate. *See generally Harrison on Wills and Administration* (3d ed. 1990) § 467; and Annotation, *Construction and Effect of Will Provisions Expressly Relating to the Burden of Estate or Inheritance Taxes,* 69 A.L.R.3d 122 (1976).

In the instant case, the decedent provided in the first paragraph of her holographic will that her "just debts are to be paid, including my funeral expenses." In the second paragraph of her holographic will, she provided that her "taxes are to be paid and cost of administratrix [sic]." She then made specific bequests of her property. The decedent's clear intent and testamentary plan was to pay all of her debts, expenses, and taxes from the funds available in her general estate and to then make her specific bequests without these bequests being reduced by the amount of the estate tax which would otherwise be apportioned to them. Even though she expressed her intentions in separate, successive paragraphs of her holographic will, the language used is sufficient to satisfy the requirements of Virginia's anti-apportionment statute. Therefore, in this case the federal and state estate taxes are paid from the residuary estate *without apportionment* among the specific bequests.

B. *"Flower Trust"*

In Virginia, the first principle applied to the construction of wills is that:

All rules with reference to wills, however, are subject to this, that the underlying principle always is that in the construction of wills the intention of the testator, if it is legal and can be determined, is controlling. All of the refinements of the law must yield to the power of the testator to dispose of his property as he desires. When this intention, which is the guiding star, is ascertained and can be made effective, the quest is ended and all other rules become immaterial.

*Powell v. Holland*, 224 Va. 609, 615 (1983) (quoting *Wornom v. Hampton N. & A. Inst.*, 144 Va. 533, 541 (1926)). In this case, the language in paragraph "fifth" is clear and unambiguous, and the testatrix clearly intended to create a flower trust "forever" so that flowers could be placed on her grave and those of certain other named persons.

Virginia Code § 57-31 provides as follows:

> No disposition of property heretofore or hereafter made for the maintenance or care of any cemetery, burial ground, burial lot in a cemetery, or monument, or other erections about such cemetery or burial lot, shall fail by reason of such disposition having been made in perpetuity, but shall be valid.

Placing flowers on the testatrix's grave and the graves of the other persons whom she designated is not "maintenance or care" of a burial lot, as provided for in Virginia Code § 57-31, which validates bequests for the maintenance and care of the lot or cemetery, and this statute does not include the mere provision of flowers for a grave as maintenance. The statute is clear and unambiguous. If a statute is clear and unambiguous, a court will give the statute its plain meaning. *Brown v. Lukhard*, 229 Va. 316, 321, 330 S.E.2d 84, 87 (1985). Where the statute is clear, the court may not "resort to legislative history and extrinsic facts" to interpret words whose meaning is clear; it must "take the words as written" and give them their plain meaning. *Id.* at 321. *Merriam Webster's Collegiate Dictionary* (10th ed. 1993) defines maintenance as "the act of maintaining (to keep in a constant state of repair)." The clear purpose of the statute is to allow perpetual funds to be created to keep cemeteries properly maintained, which is a strong societal interest. The placement of flowers on a grave, which is a longstanding and wide spread custom of honoring the dead, is not mentioned in the statute, nor is it an act of maintenance. The Virginia Supreme Court is very reluctant to read provisions into statutes which are not expressed. *See Makarov v. Commonwealth*, 217 Va. 381, 228 S.E.2d 573 (1971).

Paragraph "Third" of the will, wherein the Testatrix separately provides for the upkeep of her grave, shows her intention that the flower trust money was separate from maintenance of her grave. Neither the form of the bequest (use of a bank as private trustee rather than a cemetery company or church trustees) nor the express purpose of the trust (provision of flowers to the exclusion of care and maintenance of the burial lots) satisfies the requirements of § 57-31 through § 57-35 of the Code of Virginia.

"In the law of trusts there is a real and fundamental distinction between a charitable trust and one that is devoted to mere benevolence. The former is public in nature and valid; the latter is private and if it offends the rule against perpetuities, it is void." *Shenandoah Valley National Bank v. Taylor*, 192 Va. 135, 140-41, 63 S.E.2d 786 (1951). "It is very generally, although not universally, held that, in the absence of a statutory provision permitting the creation of a trust for such a purpose, a testamentary provision creating a perpetual trust to preserve and keep in repair the burial lot, grave, or monument of the testator or other named person, is not for a charitable use, in the legal sense, and so is void for repugnancy to the rule against perpetuities." Annotation, *Gift for Maintenance or Care of Private Cemetery or Burial Lot, or of Tomb or of Monument, Including the Erection Thereof, as Valid Trust*, 47 A.L.R.2d 596, 603, § 3. *See also* 15 Am. Jur. 2d, *Charities*, § 67. "The validity of a testamentary trust provision for the placing of flowers on the testator's burial lot has been both denied and affirmed." Annotation, *Gift for Maintenance or Care of Private Cemetery or Burial Lot, or of Tomb or of Monument, Including the Erection Thereof, as Valid Trust*, 47 A.L.R.2d 596, 636, § 20 (1956). The flower trust created by paragraph "Fifth" of the will is not a charitable trust, so the provision is subject to the rule against perpetuities.

While the testatrix's intent is the polestar of construction, this principle does not apply absolutely to all situations. "The law of wills in Virginia, as to the construction [of the will], requires the Court to look to the language of the will and enforce the testator's intent *provided no public policy or no positive rule of law is violated*." *Hester v. Sammons*, 171 Va. 142 (1938) (emphasis added). "The rule against perpetuities 'is a rule adopted in furtherance of public policy to prevent excessive restraints or limitations upon the alienation of an estate'." *Hagemann v. National Bank & Trust Co.*, 218 Va. 333, 340, 237 S.E.2d 388 (1977), *quoting Burruss v. Baldwin*, 199 Va. 883, 887, 103 S.E.2d 249 (1958). The *Hagemann* Court proceeded to state:

"The Rule against Perpetuities is not a rule of construction, but a peremptory command of law. It is not, like a rule of construction, a test, more or less artificial, to determine intention. Its object is to defeat intention. Therefore every provision in a will or settlement is to be construed as if the Rule did not exist, and then to the provision so construed the rule is to be remorselessly applied." Gray, *The Rule Against Perpetuities* § 629 (4th ed. 1942).

*See also Rose v. Rose*, 191 Va. 171, 179, 60 S.E.2d 45 (1950).

When the maxim that the law does not favor intestacy collides with the "public policy to prevent excessive restraints or limitations upon the alienation of an estate," *Burruss v. Baldwin, supra,* the former must yield.

*Hagemann, supra,* at 342.

Virginia Code § 55-13.3 was enacted in 1982, and it "significantly modified the harsh rule against perpetuities ... ." *Ryland Group v. Wills,* 229 Va. 459, 436, n. 2, 331 S.E.2d 399 (1985). Wills do not become effective until the death of the testatrix, so § 55-13.3 applies to this case. Before the enactment of this statute, a bequest which violated the rule against perpetuities was void. *See Lake of the Woods Ass'n v. McHugh,* 238 Va. 1, 380 S.E.2d 872 (1989). However, Code § 55-13.3 now operates to save for at least twenty-one years a bequest, which would otherwise be void because it violated the rule against perpetuities. *Ryland Group v. Wills, supra,* at 463. Virginia Code § 55-13.3(B) provides that:

> If under a donative transfer an interest in property fails because it does not vest or cannot vest within the period of the rule against perpetuities, the transferred property shall be disposed of in the manner which most closely effectuates the transferor's manifested plan of distribution, which is within the limits of the rule against perpetuities. The determination of the transferor's manifested plan of distribution shall be made by a court of equity in the county or city wherein the affected property or the greater part thereof is located.

The editors of 61 Am. Jur. 2d, *Perpetuities, Etc.,* § 31, state:

> A reformation statute commonly provides that no interest is void or voidable as in violation of the rule against perpetuities if, and to the extent that, it can be reformed or construed to give effect to the general intent of the creator of the interest. It has been held that under such a statute a trial court is not only empowered, but also mandated to construe and reform a will in order to avoid the invalidating consequences of the rule against perpetuities, since the purpose of the statute is to adopt the common law doctrine of cy pres and to expand its application from the charitable field to all instruments in general ...

Arguably, the duty of a court to reform an invalid instrument will discourage litigation by disgruntled heirs at law who otherwise might stand to profit from the defeat of at least part of a dispositive scheme.

In this case there is no doubt but that the testatrix wanted $150,000 to be set aside in her flower trust. She also designated Mount Hebron Cemetery, where she is buried, as a beneficiary of $1,000.00 of her estate in paragraph "Third" of her will. Mount Hebron will maintain the decedent's grave, and the decedent was concerned about the appearance of her grave. Of her twenty-one heirs at law, only four were objects of her bounty in her will, and one of these was deleted as a beneficiary by her codicil. The executrix, who is the decedent's first cousin, received a bequest of $100,000 plus stock valued at $19,000, so it is clear that the decedent had preferences among her relatives and friends, knew how to show that preference by large gifts, and preferred not to include most of her heirs at law as beneficiaries of her substantial estate.

Therefore, this court will reform paragraph "Fifth" of her will pursuant to Virginia Code § 55-13.3(B) and order that $150,000.00 be held in trust as directed by the testatrix until February 1, 2018, which is twenty-one years from the date of the testatrix's death, and be used to place flowers as specified in paragraph "Fifth" of her will. To the extent that any funds remain in the trust on February 1, 2018, the balance then remaining shall be paid to the trustees or entity then operating Mount Hebron Cemetery, Winchester, Virginia.

### III. *Decision*

For the foregoing reasons, it is adjudged and ordered that:

1. The federal and state estate taxes are to be paid from the residuary estate without apportionment among the specific bequests.

2. Pursuant to paragraph "Fifth" of the will, a trust with a term of twenty-one years from the date of the death of the decedent will be created and funded with $150,000.00 and will be used to place flowers as specified in paragraph "Fifth" of her will. F. & M. Bank – Winchester shall be the trustee of the trust. To the extent that any funds remain in the trust on February 1, 2018, the balance then remaining shall be paid to the trustees or entity then operating Mount Hebron Cemetery, Winchester, Virginia.

3. The balance remaining in the residuary estate after funding the flower trust with $150,000.00 and paying the costs of administration and other just

318

charges against the estate shall be distributed among the decedent's heirs at law according to their interests.