## CIRCUIT COURT OF FAIRFAX COUNTY

Franconia Two, L.P.

v.

Omniguru Systems, Inc.

February 18, 2011

Case No. CL-2010-1038

By Judge Michael F. Devine

The parties came before the Court on January 12, 2011, for trial without a jury on the Plaintiff's *quantum meruit* claim. The issue before the Court is whether the lease between the Plaintiff landlord and a tenant bars the landlord's *quantum meruit* claim against the occupant of the leased space who is not a party to that lease. At the conclusion of the trial, the Court took the matter under advisement. After full consideration of the pleadings, the evidence presented at trial, the *ore tenus* arguments, and the applicable governing authorities, the Court now holds that the lease between the landlord and tenant is unenforceable, and thus Plaintiff's *quantum meruit* claim is not barred against the occupant. The Court further finds that the Plaintiff is entitled to damages in the amount of $23,285.91.

### Background

Plaintiff Franconia Two, L.P. ("Landlord"), owns Springfield Mall in Springfield, Virginia. In 2003, the Landlord leased space to Jerry's Properties, Inc., d/b/a Jerry's Subs ("Tenant"), and they executed a lease ("Original Lease"). Subsequently, the leased space was occupied by Tenant's franchisee, Defendant Omniguru Systems, Inc., t/a Jerry's Subs Springfield Mall ("Occupant" or "Omniguru"). However, the Original Lease was not assigned to the Occupant, nor was there a lease between the Landlord and the Occupant. The Occupant paid the rent due to the Landlord under the Original Lease.

Section 7.1 of the Original Lease addresses utilities, including fresh water and sewage, as follows: "Tenant . . . shall arrange with the appropriate utility company for services to the Leased Premises, and shall pay such utility company directly for such services." Water used in connection with heating and air conditioning is governed by § 7.2 of the Original Lease, which states that the "Landlord shall supply the Leased Premises with electricity and with hot and chilled water for heating and air conditioning" in exchange for a "Utility Charge."

In March 2006, the Occupant wrote the Landlord asking for a rent reduction and questioning the amount of the Utility Charge. The Landlord responded, writing:

> Your allegation the Utility Charge includes the water bill for operation of the Tenant's business is without merit. Any payment for water in the Utility Charge is only for heating and air conditioning the Leased Premises and not for the Tenant's business operation. The Lease specifically requires the Tenant to arrange for its own utilities and pay such utility company directly for those services.

In May 2007, the Landlord and Tenant executed a lease modification agreement ("Lease Modification"). Again, payments for water were referenced, with the Lease Modification stating that the "Tenant's obligation to pay . . . directly to the provider by Tenant under the Lease . . . shall remain in full force and effect." And again, the Occupant was not a party to the Lease Modification. Thus, both the Original Lease and the Lease Modification (collectively, the "Lease") obligated the Tenant to contract directly with the Fairfax County Water Authority ("FCWA") for water and sewer services.

Such a course of action, however, was impossible. In the older section of the mall, FCWA serviced each retailer individually on a separate account. However, in the newer section of the mall, where the Occupant's restaurant is located, FCWA provided service only to the Landlord on the Landlord's account. The Landlord in turn provided water to the individual retailers. Each original tenant in the new section was required to install a water meter. Periodically, the Landlord took meter readings and billed each retailer for its water use at the rate charged by FCWA.

On September 21, 2007, the Landlord wrote to the Tenant demanding payment for past due water charges and threatening litigation. "[I]f payment is not received on or before September 28, 2007," the letter stated, "we shall institute legal action in a court of competent jurisdiction." "I am sorry it has come to this," the letter continued, "[but] we are finished granting concessions." The Tenant did not respond. Instead, on September 28, the Occupant responded, writing: "Enclosed please find a check in the amount

of $7,985 according to your settlement amount for water bills." The check was drawn on a bank account in the Occupant's name, and the subject line stated it was for "water bills settlement."

Thereafter, the Landlord continued to pay the FCWA and send bills to the Tenant. But again, payment was not forthcoming from either the Tenant or the Occupant. This litigation followed, proving correct the observation attributed to Mark Twain, that "[w]hiskey is for drinking; water is for fighting over. *See Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1162 (9th Cir. 2007).

In 2010, the Landlord filed suit against the Occupant seeking *quantum meruit* damages for water used by the Occupant but not paid for. At trial, the Occupant argued that the *quantum meruit* claim was barred because the Lease is an enforceable contract covering the same subject matter.

*Analysis*

*Quantum meruit* (from the Latin, "as much as he has deserved") is defined in general terms as "[a] claim or right of action for the reasonable value of services rendered." *Black's Law Dictionary* 1276 (8th ed. 2004). Although water may be thought of as a good rather than a service, making recovery sound in *quantum valebat* rather than *quantum meruit*, when faced with similar facts, the Supreme Court of Virginia has applied *quantum meruit* analysis. *See Po River Water & Sewer Co. v. Indian Acres Club*, 255 Va. 108, 495 S.E.2d 478 (1998). Following this precedent, this Court applies *quantum meruit* analysis in this case. "[F]or a court to award a *quantum meruit* recovery, the court must conclude that there is no enforceable express contract between the parties covering the same subject matter." *Mongold v. Woods*, 278 Va. 196, 204, 677 S.E.2d 288, 292 (2009) (citing *Nedrich v. Jones*, 245 Va. 465, 477, 429 S.E.2d 201, 207 (1993)). A division of authority exists as to the scope of this rule; "some courts have held that this rule applies to bar a suit between A and B where an express contract on the same subject matter exists between A and C, other courts have rejected such an application of this rule." *Datastaff Tech. Group, Inc. v. Centex Constr. Co.*, 528 F. Supp. 2d 587, 598 (E.D. Va. 2007) (footnote omitted). In contrast, it is undisputed that, "where work is done on an express contract which is void or unenforceable, the beneficiary of the work may be liable for the value of the services rendered." *Royer v. Board of County Supervisors*, 176 Va. 268, 279-80, 10 S.E.2d 876, 881 (1940). Thus, the threshold question before this Court is whether an enforceable express contract covering the same subject matter exists. The Court, therefore, must determine first whether the term regarding water service in the Lease is enforceable between the Landlord and Tenant.

## A. *Impossibility Doctrine*

The impossibility doctrine provides, in part, that, when a government's action renders a party's performance of a contractual duty impossible, the party's performance may be excused. *See Housing Auth. v. East Tenn. Light and Power Co.*, 183 Va. 64, 72, 31 S.E.2d 273, 276 (1944). It is generally accepted that government action "may emanate from any level of government" and "technical distinctions between 'law,' 'regulation,' 'order' and the like are disregarded." Restatement (Second) of Contracts § 264, cmt. b (1981) (hereafter "Restatement"). The Supreme Court of Virginia has not yet expressly endorsed the rules set forth in Restatement § 264; however, it has cited a neighboring "impracticability" section. *See Long Signature Homes v. Fairfield Woods*, 248 Va. 95, 99, 445 S.E.2d 489, 491 (1994) (citing Restatement § 269). And other courts, including the United States Supreme Court, have repeatedly cited § 264. *See, e.g., Eastern Associated Coal Corp. v. Mine Workers*, 531 U.S. 57, 69, 121 S. Ct. 462, 148 L. Ed. 2d 354 (2000) (Scalia, J., concurring) ("Supervening law is always grounds for the dissolution of a contractual obligation." (citing Restatement § 264)). This Court concludes that the rules restated in Restatement § 264 are part of the common law of contracts in Virginia. Moreover, impossibility may be raised if the government's action "already exists at the time of the making of the contract." *Id.*, cmt. a. *See generally* Arthur Corbin, *Corbin on Contracts*, § 1326, at 1101 (one vol. ed. 2001) (discussing preexisting impossibility).

The impossibility doctrine is subject to several important limitations. First, a promisor who seeks to use impossibility as an excuse for nonperformance must not be at fault, must not have assumed the risk, and must neither know nor have reason to know of the relevant government action. *See Appalachian Power Co. v. John Stewart Walker, Inc.*, 214 Va. 524, 535, 201 S.E.2d 758, 766 (1974); *Housing Auth.*, 183 Va. at 72, 31 S.E.2d at 276. *See generally* Restatement § 266(1). Second, "fault" as a limit applies equally to a promisee. A promisee whose fault creates the impossibility of performance cannot bring a breach of contract claim for failure to perform. "A plaintiff cannot prevail in an action for nonperformance of a contract, for which nonperformance he alone is responsible. If the impossibility of performance arises directly or even indirectly from the acts of the promisee, it is sufficient excuse for nonperformance." *Boggs v. Duncan*, 202 Va. 877, 882, 121 S.E.2d 359, 363 (1961) (quoting 12 Am. Jur., *Contracts*, § 381). *See also Vollmar v. CSX Transp.*, 705 F. Supp. 1154, 1176 (E.D. Va. 1989) ("[T]he affected party must have had no reason to know at the time the contract was made of the facts on which he later relies." (quoting Restatement § 266(1), cmt. a).

In this case, both the Landlord and the Tenant actually knew or should have known of the impossibility, if not in 2003 when they executed the Original Lease, then certainly in 2007 when they entered into the Lease Modification. The Landlord, moreover, was responsible for drafting the impossible term. Consequently, neither the Landlord nor the Tenant could enforce the Lease term regarding water service against the other through a breach of contract action. Because the Lease contains no enforceable express contract covering the subject matter of water service, the Landlord's *quantum meruit* claim against the Occupant is not barred. Having found the Lease unenforceable, the Court need not address Omniguru's argument that a valid contract between the Landlord and the Tenant bars the Landlord's *quantum meruit* claim against the Occupant, a stranger to the contract.

The Court next considers whether the impossibility doctrine or the principles on which it rests also preclude the Landlord's *quantum meruit* claim against the Occupant. The traditional rationale for the impossibility doctrine appears straightforward: "The law does not require [a party] to disobey the law, and the state does not penalize him for yielding to its own commands." Corbin, *supra*, § 1343, at 1124. *Cf. Cangiano v. LSH Bldg. Co.*, 271 Va. 171, 180, 623 S.E.2d 889, 895 (2006) ("[E]quity will not compel that which is impossible to perform.").

Yet the limits on the impossibility doctrine reveal that this rationale is incomplete. The doctrine's unavailability to a party who knew or had reason to know of the impossibility suggests that other principles are implicated. One is premised on the economic theory that, all other things being equal, the superior risk bearer or cheaper cost avoider should bear a given risk. A party to a contract who knew (or reasonably should have known) of the impossibility is the superior risk bearer because he is the party who can more easily foresee and avoid the impossibility by modifying his behavior and incorporating any cost into the contract price. *See generally* Richard Posner & Andrew Rosenfield, *Impossibility and Related Doctrines in Contract Law: An Economic Analysis*, 6 J. Legal Stud. 83 (1977). Another principle is the requirement that promises must be mutually obligatory; otherwise, the contract fails for lack of consideration. *See American Agricultural Co. v. Kennedy*, 103 Va. 171, 176, 48 S.E. 868, 870 (1904).

In light of these principles, this Court holds that the impossibility doctrine is properly applied only to the parties to a contract. Strangers to the contract did not bargain for an allocation of risk, either explicitly or implicitly, or make any promise in exchange for another's promise. Having neither risked nor promised anything, the stranger is not entitled to the benefit of the protection afforded to a party to the contract by the impossibility doctrine.

B. *Quantum Meruit*

The Court now turns to the merits of the *quantum meruit* claim. A *quantum meruit* claim has three elements: (1) the plaintiff confers a benefit on the defendant; (2) the defendant knows that the plaintiff is conferring the benefit; and (3) the defendant accepts or retains the benefit under circumstances which "would make it inequitable for the defendant to retain the benefit without paying for its value." *E. E. Lyons Constr. Co. v. TRM Dev. Corp.*, 25 Va. Cir. 352, 354 (Fairfax County 1991) (citing *Nossen v. Hoy*, 750 F. Supp. 740, 744 (E.D. Va. 1990)). *See also R. M. Harrison Mech. Corp. v. Decker Indus., Inc.*, 75 Va. Cir. 404, 407 (Hopewell 2008); *T & M Elec. v. Prologis Trust*, 70 Va. Cir. 403, 405 (Loudoun County 2006). "The measure of recovery is the reasonable value of the services performed, and not the amount of benefit which actually accrued from them." *Marine Dev. Corp. v. Rodak*, 225 Va. 137, 144, 300 S.E.2d 763, 767 (1983) (quoting *Hendrickson v. Meredith*, 161 Va. 193, 202, 170 S.E. 602, 605 (1933)).

The Court finds that each element has been established. First, it is undisputed that the Landlord conferred benefits on the Occupant by providing water services. Second, the Occupant knew that the Landlord was conferring these benefits, as demonstrated by the Occupant's letter of September 28, 2007. Third, the Occupant accepted the benefits under circumstances which this Court finds would make it inequitable for the Occupant to reap the benefits without paying for their value. Stated simply, the Occupant should pay the charges for the water it used in operating its restaurant in the amount of $23,285.91. This dollar figure includes the four itemized "water charges" introduced at trial of $5,321.63, $7,707.29, $7,649.23, and $2,607.76, as set forth in Plaintiff's Exhibit 2. It excludes the remaining itemized charges contained in Exhibit 2, such as "insurance" and "base rent," which were not raised in connection with the *quantum meruit* claim at trial.

## Conclusion

The Court finds that the Landlord's *quantum meruit* claim against the Occupant is not barred by the existence of the Lease between the Landlord and the Tenant because the Lease term regarding water service is unenforceable between the Landlord and the Tenant. The Court further finds that the Landlord is entitled to *quantum meruit* damages because it conferred services on the Occupant and the Occupant knew of and accepted those services under circumstances which render it inequitable for the Occupant to retain the benefit of those services without paying for them.

An Order will be entered consistent with this opinion awarding judgment in favor of the Plaintiff and against the Defendant in the amount of $23,285.91.